# EXHIBIT A



Slip Copy

Page 1

2005 WL 83471 (D Del )

**(Cite as: 2005 WL 83471 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D Delaware
ESPEED, INC ; Cantor Fitzgerald, L P ; and CFPH,
L L C , Plaintiffs,
v
BROKERTEC USA, L L C ; Brokertec Global,
L L C ; Garban, LLC; ICAP PLC; OM AB;
and OM Technology (U S ), Inc , Defendants.
**No. Civ.A.03-612-KAJ.**

Jan 11, 2005
Jack B Blumenfeld, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Plaintiffs.

Richard L Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Defendants.

Patricia C Hannigan, U S Attorney's Office,
Wilmington, DE, for Movant

*MEMORANDUM ORDER*

JORDAN, J.

I. Introduction

*1 Presently before me is a motion (Docket Item
["D I "] 530) filed by eSpeed, Inc , Cantor
Fitzgerald, L P , and CFPH, L L C (collectively
"eSpeed") seeking reconsideration of the October
25, 2004 Memorandum Opinion and Order in which
Ikd ruled that prosecution history estoppel barred
eSpeed from asserting the doctrine of equivalents in
this case (D I 527, 528 at 9-12) Also before me is
a motion (D I 531) filed by BrokerTec USA,
L L C , Garban, L L C , ICAP Technology AB, and
OM Technology (US), Inc (collectively

"BrokerTec") seeking reconsideration of the same
Opinion and Order to the extent that I denied their
motion for Summary Judgment of
Non-Infringement (D I 527, 528) I have
jurisdiction over this case pursuant to 28 U S C §
1331 For the reasons that follow, the motions will
be denied

II Background

Because the factual and procedural history of this
case has been previously set forth (*see* D I 527), it
will not be repeated here

III Standard of Review

Motions for reconsideration should be granted only
"sparingly." *Karr v. Castle,* 768 F Supp 1087, 1090
(D Del 1991) In this district, motions for
reconsideration are granted only if it appears that
the court has patently misunderstood a party, has
made a decision outside the adversarial issues
presented by the parties, or has made an error not of
reasoning, but of apprehension *Brambles USA, Inc
v Blocker,* 735 F Supp 1239, 1240 (D Del 1990)
(citing *Above the Belt, Inc v Mel Bohannan
Roofing, Inc ,* 99 F R D 99, 101 (E D Va 1983))
"Courts should be particularly vigilant that motions
for reargument or reconsideration are not used as a
means to argue new facts or issues that inexcusably
were not presented to the court in the matter
previously decided " *Id*

Further, a district court should grant a motion for
reconsideration which alters, amends, or offers
relief from a judgment only when: (1) there has
been an intervening change in the controlling law;
(2) there is newly discovered evidence which was
not available to the moving party at the time of
judgment; or (3) there is a need to correct a legal or
factual error which has resulted in a manifest
injustice *See Max's Seafood Café by Lou Ann, Inc
v. Quinteros,* 176 F 3d 669, 677 (3d Cir 1999)

© 2005 Thomson/West No Claim to Orig U S Govt Works

Slip Copy                                                                    Page 2

2005 WL 83471 (D Del.)

**(Cite as: 2005 WL 83471 (D.Del.))**

(citation omitted).

IV. Discussion

A. eSpeed's Motion for Reconsideration

eSpeed argues that I should reconsider and vacate the October 25, 2004 Memorandum Opinion and Order because I "misapprehended key facts about patent prosecution practice." (D.I. 530 at 2.) Specifically, eSpeed argues that I misunderstood that the common policy used when filing a divisional application is to submit the original claims of a parent application and then cancel those claims by preliminary amendment (*Id.*) eSpeed also argues that I "misapprehended a key point of law" related to rebutting the presumption that a narrowing amendment surrendered a particular equivalent. (*Id.*) Taking the last argument first, it simply asks that I reverse my interpretation of the law. Since I do not believe my legal conclusions or analysis were in error, I decline to reverse them. No further discussion of this point is necessary. *See Max's Seafood Café*, 176 F.3d at 677 (holding that reconsideration is reserved for clear errors of law)

*2 With respect to eSpeed's argument about the effect of filing a preliminary amendment, eSpeed asserts that a preliminary amendment is made before any substantive action is taken by the Patent and Trademark Office (*Id.*) eSpeed cites 37 C.F.R. § 1.53(b) to show that it is proper to submit the original claims of a parent application when filing a divisional application. (*Id.* at 4.) They then go on to say that, because a continuing application ignores the prosecution history of the parent, it is necessary to add any earlier prosecution through the use of a preliminary amendment, if one wishes to retain such prosecution in the new file. (*Id.* at 5.) These assertions, however, are simply beside the point. The question is whether the inventor narrowed his claims. In this case, I have concluded that the answer to that question is yes because the inventor filed amendments to his original claim that restricted the scope of the claim in question

eSpeed also asserts that I am not aware of the procedure for numbering claims upon issuance of a

patent (*Id.*) Consequently, they argue I compared two "wholly unrelated claims simply because they had the same number at different times." (*Id.*) It is true that the two claims I compared for the purpose of determining if prosecution history applied coincidentally are numbered identically and that before the patent issued they were not. Nowhere in my opinion, however, is this numbering coincidence relied on as a basis for my decision. Rather, the numbers are included to aid the parties in referencing the claims. What I did rest my opinion on was the fact that claim 20, as issued, contained the limitations at issue and the original claims did not contain such limitations. Accordingly, eSpeed's motion seeking reconsideration of the October 25, 2004 Memorandum Opinion and Order is denied

B. BrokerTec's Motion for Reconsideration

BrokerTec argues that reconsideration of the May 18, 2004 Memorandum Order should be granted because I misapprehended the workings of the BrokerTec ETN and the Garban ETC/ETN and their relationship to each other. (D.I. 531 at 1-3.) BrokerTec makes several arguments for why I should have granted Summary Judgment as to certain aspects of the case. The most direct answer to those assertions is that BrokerTec did not file a summary judgment motion fairly calling those aspects of the case into question.

As to BrokerTec's specific assertion that "there was no operative 'intertwining' whatsoever between the BrokerTec ETN and Garban ETC/GTN systems . . . prior to September 15, 2003" (D.I. 531 at 7), that may be true, but it does not address the question of infringement after that date. The proposed temporal limitation was never argued. Also, the issue of limiting the summary judgment motion to a particular system was only raised in BrokerTec's reply (D.I. 510 at 11), and eSpeed was not properly put on notice of BrokerTec's. Consequently, BrokerTec's motion for reconsideration is also denied.

V. Conclusion

*3 Accordingly, IT IS HEREBY ORDERED that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 3

2005 WL 83471 (D.Del.)

**(Cite as: 2005 WL 83471 (D.Del.))**

both eSpeed's and BrokerTec's motions for reconsideration (D.I.531, 530) are DENIED

2005 WL 83471 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00612   (Docket)

                        (Jun 30, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                            Page 1

2004 WL 2898061 (D.Del.)

**(Cite as: 2004 WL 2898061 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,
D. Delaware.
PHARMASTEM THERAPEUTICS, INC., Plaintiff,
v.
VIACELL., INC., et al., Defendants.
**No. 02-148 GMS.**

Dec. 14, 2004
Philip A. Rovner, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Plaintiff and Defendant

Richard D. Kirk, Morris, James, Hitchens &
Williams, Wilmington, DE, for Defendants.

Jeffrey L. Moyer, Richards, Layton & Finger,
Robert F. Stewart, Jr., Dilworth Paxson LLP,
David Allan Felice, Cozen & O'Connor Chase
Manhattan Centre, Wilmington, DE, for
Counter-Claimant.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

*1 On February 22, 2002, PharmaStem
Therapeutics, Inc. ("PharmaStem") filed this lawsuit
against ViaCell, Inc. ("ViaCell"), Cryo-Cell
International, Inc. ("Cryo-Cell"), CorCell, Inc.
("CorCell"), StemCyte, Inc. ("StemCyte"), CBR
Systems, Inc. ("CBR"), Birthcells Technology, Inc.
("Birthcells"), Nustem Technologies, Inc.
("Nustem"), and Bio-Cell, Inc. ("Bio-Cell")
(collectively, the "defendants"), [FN1] alleging
infringement of United States Patents Nos. B1
5,004,681 (" '681 Patent") and 5,192,553 (" '553

Patent") On October 29, 2003, the jury returned a
unanimous verdict on all claims in favor of
Pharmastem. The parties then filed several post-trial
motions [FN2] On September 15, 2004, the court
issued a Memorandum Opinion and Order (the
"Post-trial Order") addressing the post-trial
motions. The court concluded that the defendants
do not infringe the '553 patent and granted a partial
new trial on the issue of infringement and damages
with respect to the '681 Patent [FN3]

FN1 A default judgment was subsequently
rendered against NuStem on July 10, 2002.
StemCyte and PharmaStem entered a
settlement agreement before trial, and
StemCyte accordingly was dismissed from
this action on October 21, 2003.

FN2 ViaCell filed a renewed motion for
judgment as a matter of law, and, in the
alternative, a motion for a new trial or for a
remittitur, in which the defendants CBR,
CorCell, and Cryo-Cell joined ViaCell
filed another alternative motion, in which
the other defendants also joined, for
findings by the court and/or to alter or
amend judgment pursuant to Federal Rule
of Civil Procedure 52, 59(e) and/or the
court's equitable power PharmaStem filed
a motion for enhanced damages, attorneys'
fees, pre-judgment interest and post
judgment interest, a motion for a
permanent injunction, and a motion to
strike the affidavit of Chris Adams
submitted in support of ViaCell's motion to
alter or amend the judgment

FN3 For a complete recitation of the facts,
procedural history, and post-trial rulings of
this case, please see *Pharmastem
Therapeutics, Inc. v. Viacell, Inc.*, C.A.
No 02-148 GMS, 2004 WL 2127192
(D.Del Sept.15, 2004).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                    Page 2

2004 WL 2898061 (D.Del.)

**(Cite as: 2004 WL 2898061 (D.Del.))**

Following the Post-trial Order, CorCell and Cryo-Cell filed a motion for partial reconsideration of the court's post-trial rulings CBR and Viacell joined the motion and submitted individual memoranda that addressed issues specific to each of them. In addition, ViaCell filed a motion for entry of separate and final judgment pursuant to Federal Rule of Civil Procedure 54(b) and a motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), in which CBR, CorCell, and Cryo-Cell joined PharmaStem filed a motion for a preliminary injunction, as well as a motion for entry of separate and final judgment pursuant to Federal Rule of Civil Procedure 54(b). For the following reasons, the court will grant the defendants' motion for partial reconsideration, reverse its post-trial ruling as to the '681 patent, and enter judgment as a matter of law ("JMOL") that the defendants do not infringe the '681 patent [FN4]

> FN4 The court will deny the plaintiff's and the defendants' motions for entry of separate and final judgment pursuant to Federal Rule of Civil Procedure 54(b), the defendants' motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and the plaintiff's motion for preliminary injunction, because the court's ruling on the motion for reconsideration renders them moot.

II. STANDARDS OF REVIEW

A. Motion For Reconsideration

As a general rule, motions for reconsideration should be granted only "sparingly." *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F.Supp.2d 405, 407 (D.Del.2004); *Karr v. Castle*, 768 F.Supp. 1087, 1090 (D.Del.1991). In this district, these types of motions are granted only if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. *See, e.g., Shering Corp. v. Amgen, Inc.*, 25 F.Supp.2d 293, 295 (D.Del.1998); *Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D.Del.1990) (citing *Above the Belt, Inc. v.*

*Mel Bonhannan Roofing, Inc.*, 99 F.R.D. 99 (E.D.Va.1983)); *see also Karr*, 768 F.Supp. at 1090 (citing same). Moreover, even if the court has committed one of these errors, there is no need to grant a motion for reconsideration if it would not alter the court's initial decision. *See Pirelli Cable Corp. v. Ciena Corp.*, 988 F.Supp. 424, 455 (D.Del.1998). Finally, motions for reconsideration "should not be used to rehash arguments already briefed." *TI Group Automotive Systems, (North America), Inc. v. VDO North America L.L.C.*, 2002 U.S. Dist. LEXIS 1018, 2002 WL 87472 (D.Del.2002) (citation omitted); *see also Quaker Alloy Casting v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988) ("This Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.")

B. Renewed Motion for Judgment as a Matter of Law

\*2 Pursuant to Federal Rule of Civil Procedure 50, a court may render JMOL after the moving party is fully heard on an issue at trial, if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993) (citation omitted). If the court denies a motion for JMOL during trial, the motion may be renewed within ten days of entry of judgment in the case. Fed.R.Civ.P. 50(b). To prevail on a renewed motion for JMOL following a jury trial, a party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed.Cir.1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed.Cir.1984)) "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893. In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Id.; Richardson-Vicks Inc. v. UpJohn Co.*, 122 F.3d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3

2004 WL 2898061 (D.Del.)

**(Cite as: 2004 WL 2898061 (D.Del.))**

1476, 1479 (Fed.Cir.1997). The appropriate inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed.Cir.1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893.

III. DISCUSSION

In the Post-trial Order, dated September 15, 2004, the court denied the defendants' motion for JMOL on the issue of infringement and damages with respect to the '681 patent, but granted the defendants' motion in the alternative for a new trial on this issue. By their motion, the defendants request the court to reconsider its Post-trial Order and grant the motion for JMOL.

The defendants contend that Pharmastem failed to meet its burden with respect to infringement of the '681 patent because: (1) the issue before the jury, as Pharmastem chose to try the case, was whether all of the cord blood units processed and cryopreserved by the defendants infringe the '681 patent, and they do not; and (2) Pharmastem was obligated, as a matter of law, to adduce evidence with respect to specific units of cord blood stored by the defendants and to show with respect to those specific units that they contain sufficient stem cells to reconstitute a human adult, and did not meet this obligation. The defendants rely on the Post-trial order for support.

In response, Pharmastem asserts that it adduced substantial evidence at trial that the defendants infringe the '681 patent. Pharmastem also asserts that the scientific and medical evidence support cord blood transplantation in adults, and that the defendants use that evidence to promote their cord blood banking services for adult use. Pharmastem supports its assertions with statements from the defendants' marketing materials regarding the potential for adult transplantation. Pharmastem also relies on the defendants' testimony regarding their marketing materials, the threshold quantity of cord blood they collect, and the threshold amount of cells

they require. Lastly, Pharmastem relies on the Post-trial Order, which states, "[t]he record suggests that at least some of the defendants' cord blood units infringe in that there is evidence of successful transplants of the defendants' compositions into human adults." *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, C.A. No. 02-148 GMS, 2004 WL 2127192, at *11 (D.Del. Sept.15, 2004).

*3 The parties agree that the only disputed issue at trial was which of the defendants' cord blood units contain stem cells in an amount sufficient to effect hematopoietic reconstitution of an adult. According to Pharmastem's presentation to the jury, the answer to that issue was 100%. In other words, Pharmastem's position at trial was that "all" of the defendants' cord blood units infringe the '681 patent. [FN5] Pharmastem's post-trial motions, as well as its motion for preliminary injunction are unclear as to whether it has changed its position regarding infringement. For example, Pharmastem's opposition to CBR's motion for judgment as a matter of law states that "CBR's admissions in its marketing documents, the standard operating procedures of the company, as well as the testimony of Dr. Harris support a finding that all of the samples infringe..." (D.I. 418, at 3) In addition, Pharmastem's opening brief in support of its motion for preliminary injunction defines the issue as follows: "As the Court recognizes, the dispute is not whether any of the defendants' cord blood units infringe, as 'the record suggests that at least some of the defendants' cord blood units infringe...', but whether *all (i.e., every single one)* of the defendants' cord blood units infringe." (D.I. 559, at 5) (emphasis added). Pharmastem's opposition brief to the motion for reconsideration, however, states that "[t]here is abundant medical, scientific, and party proof that the vast majority, if not all, of the defendants' cord blood units contain stem cells in an amount sufficient to effect hematopoietic reconstitution of an adult." (D.I. 571, at 14). After reviewing the record, the post-trial motions, and the motion for reconsideration, the court concludes that Pharmastem's position, prior to its briefing on the motion for reconsideration, was that 100% of the defendants' cord blood units infringe the '681 patent. [FN6] Therefore, in order to meet its burden,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 4

2004 WL 2898061 (D Del.)

**(Cite as: 2004 WL 2898061 (D.Del.))**

Pharmastem had to adduce evidence that 100% of the defendants' cord blood units contained stem cells in a sufficient amount to reconstitute a human adult Pharmastem, however, did not meet its burden

> FN5 Indeed, when referring to question fourteen of the verdict form during closing arguments (*i e* the question that directed the jury to enter the number of cord blood units that infringe the '681 patent), counsel for Pharmastem told the jury to base the number of units that infringe on the numbers provided by the defendants--that is, 34,293 for ViaCell; 49,646 for Cryo-Cell; 4,640 for CorCell; and 34,649 for CBR These numbers are equivalent to the total number of cord blood units stored by each of the defendants Further, Pharmastem did not refer to any specific unit or units in presenting its case to the jury Rather, Pharmastem referred to the defendants' cord blood units as a whole.

> FN6 The court will hold Pharmastem to its presentation to the jury, as well as its assertions in its post-trial motions and its motion for preliminary injunction

First, the court has already determined that "the record overwhelmingly indicates that cord blood units will not all contain sufficient cells to reconstitute an adult" *Pharmastem Therapeutics, Inc. v. Viacell, Inc., et al.*, No. C A 02-148 GMS, 2004 WL 2127192, at *11 (D Del Sept 15, 2004). For example, the '681 patent illustrates that each cord blood sample will vary in terms of its cell count '681 patent Table III (providing cord blood samples with different total volumes and total nucleated blood cells) In addition, Pharmastem represented to the PTO that cord blood units "are highly variable in their stem cell content such that any particular cord blood collection may have low or no stem cells." Tr Ex. 1370, at 30; *see* Wagner Tr at 1270 The court, therefore, will affirm its post-trial conclusion that "[t]he jury's finding that *all* of the defendants' cord blood units infringe the '681 patent ... was against the great weight of the

evidence." *Pharmastem*, 2004 WL 2127192, at *11

*4 Second, even assuming that "at least some of the defendants' cord blood units infringe in that there is evidence of successful transplants of the defendants' compositions into human adults," the court finds that Pharmastem presented no evidence to the jury from which it could conclude that any specific cord blood unit or units stored by any of the defendants contained stem cells in a sufficient amount to reconstitute a human adult. All of the defendants made available to Pharmastem their data with respect to individual units Pharmastem, however, did not have its infringement expert, Dr Mary Hendrix ("Dr Hendrix"), testify regarding whether the data indicated that any of the defendants' units infringed In fact, Dr Hendrix testified that she did not review the defendants' data Hendrix Tr at 1038 Rather, Dr Hendrix based her infringement opinion on the fact that the defendants "promise stem cells for pediatric and adult transplantation" *Pharmastem*, 2004 WL 2127192, at * 11

In addition, Pharmastem presented no evidence to the court regarding how to quantify the defendants' infringement and damages flowing from the infringement Instead, Pharmastem chose to offer the evidence of successful adult transplants to prove that 100% of the defendants' units infringe However, evidence of one successful adult transplant with a single cord blood unit does not prove that any other unit has sufficient stem cells to reconstitute a human adult because, as previously stated, cord blood units are highly variable in their stem cell content. As such, the court will not infer that 100% of the defendants' units infringe based on the defendants' statements regarding adult transplantation Pharmastem failed to present evidence to the jury from which it could conclude that any specific cord blood unit or units stored by any of the defendants contained stem cells in a sufficient amount to reconstitute a human adult The court, therefore, cannot determine which or how many of the defendants' units infringe, or how to quantify damages for infringement Thus, the defendants are entitled to JMOL because there was no legally sufficient evidentiary basis for a reasonable jury to find that all, or any specific

© 2005 Thomson/West No Claim to Orig U S Govt Works

Slip Copy                                                                                                       Page 5

2004 WL 2898061 (D.Del.)

**(Cite as: 2004 WL 2898061 (D.Del.))**

number, of the defendants cord blood units infringe the '681 patent.

*ORDER*
For the reasons set forth in the court's Memorandum issued contemporaneously herewith, IT IS HEREBY ORDERED that:

1. The Motion by ViaCell, Inc., Cryo-Cell, Inc., CorCell, Inc., CBR Systems, Inc. for Partial Reconsideration of the Court's Post-Trial Rulings (D.I 547, 551, 552) is GRANTED.

2. PharmaStem, Inc.'s Motion for a Preliminary Injunction (D.I.558) is DENIED as moot.

3. The Motion by ViaCell, Inc., Cryo-Cell, Inc., CorCell, Inc., CBR Systems, Inc. for Entry of Separate and Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) (D.I 547, 548, 552) is DENIED as moot.

4. The Motion by ViaCell, Inc., Cryo-Cell, Inc., CorCell, Inc., CBR Systems, Inc. for Certification for Interlocutory Appeal Pursuant to 28 U.S.C § 1292(b) (D.I.547, 549, 552) is DENIED as moot.

*5 5. Pharmastem, Inc.'s Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) (D.I 563) is DENIED as moot.

6. The clerk shall enter judgment in favor of the defendants and against the plaintiff on the claim of infringement of U.S. Patent No. B1 5,004,681.

2004 WL 2898061 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 23310808 (Verdict and Settlement Summary) (Oct. 29, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.