**EXHIBIT 7**

P&G's Objections to Defendant's Trial Exhibit List[1]
The Proctor & Gamble Company, v. Teva Pharmaceuticals USA, Inc.
C.A. No. 04-940

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date | |
| 1 | 06/06/85 | File Wrapper for US Patent No. 4,761,406 | | DX 1 | X | | | | | |
| 2 | 08/02/88 | US Patent No.4,761,406 – Flora et al. | PG 0061784-61795 | DX 2 | X | | | | | |
| 3 | 08/08/72 | US Patent No. 3,683,080 - Francis | | DX 8 | X | | | | | |
| 4 | 10/18/77 | US Patent No. 4,054,598 – Blum et al | | DX 9 | X | | | | | |
| 5 | 05/18/82 | US Patent No. 4,330,537 – Francis | | DX 10 | X | | | | | |
| 6 | 12/21/84 | Patent Application Serial No. 06/684543 | | DX 11 | X | | | | | |
| 7 | 08/18/87 | US Patent No. 4,687,768 – Benedict et al. | | DX 12 | X | | | | | |
| 8 | | Handwritten Compound | | DX 14 | | R, 106, H | | | | |
| 9 | | Handwritten Compound | | DX 15 | | R, 106, H | | | | |

[1] Whether or not P&G has identified an objection to a document on its face, P&G reserves the right to object to any document depending upon the purpose for which it is offered, and depending on the witness through whom Teva intends to offer the document. P&G also reserves the right to object to and/or move to exclude documents following the Court's rulings on motions *in limine*, or rulings made prior to or during the trial.

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 10 | | File Wrapper for US Patent 5,583,122 | | DX 16 | X | | | | |
| 11 | 12/10/96 | US Patent No. 5,583, 122 – Benedict et al | PG 0059952-59963 | DX 17 | X | | | | |
| 12 | 10/17/83 | J.J. Benedict Special Products Group Biweekly Report - New Diphosphonates | PG 0058394 | DX 23 | X | | | | |
| 13 | | Japanese Patent No. S55-98193 (In Japanese) | | DX 26 | | 106 | | | |
| 14 | 08/18/87 | US Patent No. 4,687,767 – Bosies et al. | | DX 28 | X | | | | |
| 15 | 09/03/68 | US Patent No. 3,400,150 – Whyte et al. | TEVA R 05307-5316 | DX 29 | X | | | | |
| 16 | 11/22/83 | US Patent No. 4,416,877 – Bentzen et al. | TEVA R 05317-5331 | DX 30 | X | | | | |
| 17 | | Pharmaceutical Compositions Containing Geminal Diphosphonates | | DX 33 | | H, R, 106 | | | |
| 18 | | Critical Document Checklist | PG 0059513 | DX 34 | | 106, H, R, A | | | |
| 19 | 5/29/91 | Declaration Under 37 CFR 1.672 (b) of Kim William Zerby Constituting a Portion of the Testimony of Party Benedict et al | PG 0054985-54987 | DX 35 | | 106 | | | |
| 20 | 10/15/84 | Retention Limit 11/1/84 | PG 0058159-0058170 | DX 36 | | 106, R | | | |
| 21 | 10/14/05 | Notice of Rule 30 (b)(6) Deposition of Proctor & Gamble Company | | DX 38 | X | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | No Obj | Obj Basis | Notes | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 22 | | Highlights of the P&G/HMR Risedronate Agreement | PG 0002009-0002015 | DX 40 | | R, H, MC, LC, 106 | | | |
| 23 | | Impact of Direct-to-Consumer Advertising on Prescription Drug Spending | PG 0008100-0008110 | DX 51 | | A, H | | | |
| 24 | | Financials- Sum of Expenses; Royalty Payments to Merck for OAW; US Primary and Secondary Calls per CBD database | PG 0094413-94415 | DX 62 | X | | | | |
| 25 | | Third Preliminary Motion by Benedict et. al Under 37 C.F.R. 1.633 (c ), to designate claims as not corresponding | PG 0055131-0055136 | DX 100 | | 106 | | | |
| 26 | | Fourth Preliminary Motion by Benedict et. al Under 37 C.F.R. 1.633 (c ), to designate claims as not corresponding | PG 0060481-0060485 | DX 101 | | 106 | | | |
| 27 | | Final Hearing , May 12 1993 (Interference No. 102,399) – Benedict et al v. Bosies et al. | PG 0055570-0055586 | DX 102 | | 106 | | | |
| 28 | | Pleading- Notice of Rule 30 (b) (6) Deposition of Proctor & Gamble Company | | DX 103 | X | | | | |
| 29 | | Special Products Group Report: R&D Report | | DX 104 | X | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 30 | | Correspondence from K. W. Buckingham to Distribution Re Agenda and Data Summaries for New Diphosphonates Selection Meeting, 2/17/86 | PG 0069014-0069035 | DX 105 | X | | | | |
| 31 | | Study Design- Tox Screen 2-Day IV Screen | PG 0010758-0010780 | DX 106 | | MD | | | |
| 32 | | Correspondence from K. W. Buckingham to Distribution Re Agenda and Data Summaries for New Diphosphonates Selection Meeting, 2/17/86 | PG 0066836-0066873 | DX 107 | X | | | | |
| 33 | | Interim Report No. 11- Comparitive I.V. Toxicity of Bisphosphonates (NE-58018) in Rats: A Screen | PG 0057030-0057085 | DX 108 | X | | | | |
| 34 | | Interim Report No. 2 Comparitive I.V. Toxicity of Biphosphonates (NE-58019) in Rats: A Screen | PG 0057086-0057146 | DX 109 | X | | | | |
| 35 | | Norwich Division- Product Development Biweekly Report (Bone Metabolism Department) | PG 0033731 | DX 110 | X | | | | |
| 36 | | Article by E.R. Van Beek et al. titled, " Binding and Antiresorptive Propoerties of Heterocycle-Containing Bisphosphonate Analogs: Structure-Activity Relationships | PG 0045556-0045570 | DX 115 | | H, A | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | No Obj | Obj Basis | Notes | Admitted | Date |
|---|---|---|---|---|---|---|---|---|---|
| 37 | | Internal Correspondence from K. W Buckingham to New Diphosphonate Team Re Minutes of New Diphosphonate Team Meeting | PG 00075244-75249 | DX 123 | x | | | | |
| 38 | | 2-Pyridyl HEDP | PG 0010782-10784 | DX 125 | | 106 (Portion of DTX 64) | | | |
| 39 | | Norwich Division- Product Development Bi-weekly Report (Jocelyn E. McOsker) | PG 0034052 | DX 126 | x | | | | |
| 40 | 04/12/06 | Expert Report of Jesse David | | | | H, LC, also subject to P&G's Motion to Strike | | | |
| 41 | | U.S. Patent No. 3,962,432 | | | x | | | | |
| 42 | | U.S. Patent No. 4,621,077 | | | x | | | | |
| 43 | | U.S. Patent No. 4,072,746 | | | x | | | | |
| 44 | | U.S. Patent No. 4,057,636 | | | x | | | | |
| 45 | | U.S. Patent No. 4,004,012 | | | x | | | | |
| 46 | | U.S. Patent No. 3,928,369 | | | x | | | | |
| 47 | | U.S. Patent No. 3,591,584 | | | x | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | Notes | RESOLUTION | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | | Admitted | Date |
| 48 | | U.S. Patent No. 3,225,054 | | | X | | | | |
| 49 | | U.S. Patent No. 3,163,654 | | | X | | | | |
| 50 | | U.S. Patent No. 4,473,560 | | | X | | | | |
| 51 | | U.S. Patent No. 4,267,108 | | | X | | | | |
| 52 | | Sigmar Großman, Ulrich Moser, and Ernst Mutschler, Synthese Und Pharmakologische Prüfing von Pyridin-Analoga des Fentanyls, Arch. Pharmazie 311: 1010; 1015 (1978) | | | | 106, H, A | | | |
| 53 | 04/19/04 | Paragraph IV letter from Teva | | | X | | | | |
| 54 | 05/25/05 | P&G Responses to Teva's 1st set of Interrogatories (1-16) | | | X | | | | |
| 55 | 06/03/05 | P&G Supplemental Responses to Teva's 1st set of Interrogatories (1-16) | | | X | | | | |
| 56 | 07/22/05 | P&G Supplemental Responses to Teva's 1st set of Interrogatories (1-16) | | | X | | | | |
| 57 | 10/05/05 | P&G Supplemental Responses to Teva's 1st set of Interrogatories (1-16) | | | X | | | | |
| 58 | 07/08/05 | P&G Responses to Teva's 2nd set of Interrogatories (17-18) | | | X | | | | |
| 59 | 07/22/05 | P&G Supplemental Responses to Teva's 2nd set of Interrogatories (17-18) | | | X | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | RESOLUTION | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | | Notes | Admitted | Date | |
| 60 | 7/22/05 | P&G Responses to Teva's 3rd set of Interrogatories (19-20) | | | X | | | | | | |
| 61 | 10/05/05 | P&G Supplemental Responses to Teva's 3rd set of Interrogatories (19-20) | | | X | | | | | | |
| 62 | | Translation of Japanese Patent 80-98,193 | | | | 106, H, A | | | | | |
| 63 | | Translation of W. Ploger et al., Z. Anorg. Allg. Chem., 389, 119 (1972) | | | | 106, H, A | | | | | |
| 64 | | 2-Pyridyl HEDP – Effect in 2-Day IV Tox Screen | PG 10782-10802 | | X | | | | | | |
| 65 | | Jocelyn McOsker Declaration Under 37 C.F.R. 1.132 | PG 68943 – 68949 | | | 106 | | | | | |
| 66 | | US Patent No. 4,876,248 | | | X | | | | | | |
| 67 | | US Patent No. 4,746,654 | | | X | | | | | | |
| 68 | | Interference Proceedings for U.S. Patent No. 5,583,122 | | | X | | | | | | |
| 69 | | H. Fleisch & R. Felix, Diphosphonates, Calcified Tissue Int. 27 (2): 91-94 (1979). | | | | H, A | | | | | |
| 70 | | James J. Benedict, The Physical Chemistry of the Diphosphonates – Its Relationship to Their Medical Activity, Diphosphonates and Bone Symposium CEMO (1982) | | | | H, A | | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date | |
| 71 | | Gethin Williams & John D. Sallis, Structure-Activity Relationship of Inhibitors of Hydroxyapatite Formation, Biochem. J. 184:181-184 (1979) | | | | H, A | | | | |
| 72 | | R.B. Barlow, Structure-activity relationships, 4 Trends in Pharmacological Sciences 109 (1979) | | | | H, A | | | | |
| 73 | | F.H. Ebetino & S.M. Dansereau, Bisphosphonate antiresorptive structure-activity relationships, Bisphosphonate on Bones 139-153 (1995) | | | | H, A | | | | |
| 74 | | W.K. Sietsema et. al., Anti-resorptive dose-response relationships across three generations of bisphosphonates, Drugs under Experimental and Clinical Research 15(9):389-396 (1989) | | | | H, A | | | | |
| 75 | | E.R. Van Beek et. al, Binding and antiresorptive properties of heterocycle-containing bisphosphonate analogs: structure-Activity relationships, Bone 23(5):437-442 (1998) | | | | H, A | | | | |
| 76 | | UK Patent Application GB 2 118 042 A | | | | H, A | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | RESOLUTION | | |
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 77 | 07/17/89 | Letter from William Sietsema to Rosemary Sudan Re TR/ED/RCS/9090 (Antiresorptive Dose-Response Relationships Across Three Generations of Bisphosphonates) | PG 0067118-0067149 | | | 106, A | | | |
| 78 | | Graphs: First/Second Generation BPs | PG 0068117-0068130 | | X | | | | |
| 79 | 08/09/85 | Norwich Product Development Biweekly Report | PG 0077088 | | | 106 (Portion of DTX 91) | | | |
| 80 | 02/12/86 | Internal Correspondence from K. W. Buckingham to Distribution Re Agenda and Data Summaries for New Diphosphonate Selection Meeting, 2/17/86 | PG 78486-0078507 | | X | | | | |
| 81 | 01/04/84 | Special Products Group Biweekly Report – D.F. Eastman | PG 0010781 | | X | | | | |
| 82 | | Norwich Division- Product Development Biweekly Report- Experimental Toxicology Section | PG 0010881-0010882 | | X | | | | |
| 83 | | Pharmacology and Toxicology Information | PG 0012648-0012677 | | X | | | | |
| 84 | | Norwich Division Product Development Biweekly Report: New Bisphosphonate Toxicology Program – New Compound Screening | PG 0034091 | | X | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 85 | | Norwich Division Product Development Biweekly Report: Update on TPTX Results for 3-Pyr HEDP and 3-Pyr HPDP | PG 0041844-0041846 | | X | | | | |
| 86 | | Special Products Group Biweekly Report: Diphosphonate Synthetic Program | PG 0058427 | | X | | | | |
| 87 | | Internal Correspondence from J.J. Benedict/ R. J. Sunberg to A.D. Geddes Re Interim Report on the Syntheis Program | PG0058472-0058478 | | X | | | | |
| 88 | | Special Products Group Biweekly Report: Diphosphonate Synthetic Program | PG 0058496 | | X | | | | |
| 89 | | Proposed 1985 Schedule: 2 Day IV Toxicity Screen for New Diphosphonate Compounds | PG 0066281 | | X | | | | |
| 90 | | TPTX Contract Protocol | PG 0073802-0073806 | | X | | | | |
| 91 | | Norwich Product Development Biweekly Report, James Benedict | PG 0077088-0077099 | | X | | | | |
| 92 | | Norwich Product Development Biweekly Report, Kent W. Buckingham | PG 0077110-0077120 | | X | | | | |
| 93 | | Portions of 37 C.F.R., subpart E - Interferences referred to herein (in the version that existed prior to the September 13,2004 revision): | | | | 106, A | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | | Admitted | Date | |
| 94 | | Handwritten Doc: Adult Rat Hepatocyte –In Vitro Toxicity | PG 10753 – PG10756 | | X | | | | | | |
| 95 | | UPDATE November 01, 2005 (CHART) | PG 10803 - PG 10804 | | X | | | | | | |
| 96 | | January 14, 1986 (TODAY) w/ notes | PG 10807 | | X | | | | | | |
| 97 | | January 14, 1986 (TODAY) w/ notes | PG 10814 | | X | | | | | | |
| 98 | | Interdepartmental Correspondence from F. H. Ebetino to k.J. Ibbotson and S. M. D'Souza re: Blind Screening of Phosphonates for Mechanism for Mechanism Studies | PG 10824 | | X | | | | | | |
| 99 | | SCHENK #25 RESULTS | PG 10834 - PG 10835 | | X | | | | | | |
| 100 | | Interdepartmental Correspondence Norwich Division to L.E. Van Petten from D.F. Eastman re: NE-58095 Toxicity | PG 12958 - PG 12968 | | X | | | | | | |
| 101 | | Bone Metabolism Department, Bone Metabolism Product Department and Medical Affairs Division Product Development – Summary Report November 18, 1987 | PG 23091 - PG 23102 | | X | | | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | RESOLUTION | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 102 | | Norwich Division – Product Development Biweekly Report Bone Metabolic Department – Superior Antiresorptive Activity for a New Diphosphonate (NE-58095) | PG 33732 | | X | | | | |
| 103 | | Norwich Division Product Development Biweekly Report: Update on TPTX Results for 3-Pyr HEDP and 3-Pyr HPDP, Kent W. Buckingham | PG 41844 | | X | | | | |
| 104 | | Norwich Division Product Development Biweekly Report: Continued Preclinical Testing of New Diphosphonates, , Kent W. Buckingham | PG 41846 | | X | | | | |
| 105 | | Memo from J.J. Benedict and C. M. Perkins to A.D. Geddes Re Project Proposal – Structure/Activity Study of Pyridyl Substituted Alkane-1, 1-diphosphonates | PG 46758 - PG 46765 | | X | | | | |
| 106 | | Interim Report No. 16 Re Comparative I.V. Toxicity of Bisphosphonates (NE-58020) In Rats: A Screen | PG 56964 - PG 5701 8 | | X | | | | |
| 107 | | Norwich Division (Cincinnati)- Product Development: The Interaction of Diphosphonates with Hydroxyapatite | PG 58337 | | X | | | | |
| 108 | | Tox Screen: 2-Day IV Screen | PG 66306 - PG 66308 | | | 106, Incomplete | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | | RESOLUTION | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 109 | | Interdepartmental Correspondence from K.E. Buckingham to Distribution Re Agenda and Data Summaries for New Diphosphonate Selection Meeting, 2/17/86 | PG 66836 - PG 66874 | | X | | | | |
| 110 | | Memo to R.P. D'Alonzo Re Proposal to Begin Development of 2-(2-pyridyl) 1-hydroxyethane-1, 1-bis (phosphonic acid) (2-pyridyl HEDP) | PG 68065 | | X | | | | |
| 111 | | Geddes et al., Bisphosphonates: Structure-activity relationships and therapeutic implications | PG 68444 - PG 68485 | | X | | | | |
| 112 | | Correspondence from Karen Johnson to Liz Sikorski Re Compound for TPTX evaluation | PG 73881 - PG 73882 | | X | | | | |
| 113 | | Correspondence from Liz Sikorski to Karen Johnson Re Copy of notebook containing the study for Compounds | PG 73883 - PG 73939 | | X | | | | |
| 114 | | Internal Correspondence from A.D. Geddes to Distribution Re Two issues regarding diphosphonates | PG 76986 - PG 76988 | | X | | | | |
| 115 | | Company Expense Chart | PG 94698-705 | | X | | | | |
| 116 | | Actonel 2001-2014 Forecasts | PGK 4120-50 | | X | | | | |
| 117 | | Business Week Telephone Interview 8/22/2000 | PGK 9090-108 | | X | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | RESOLUTION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 118 | | Brand: Actonel PMO | PGK 9353-63 | | X | | | | |
| 119 | | Correspondence from K. S. Napier Re: Risedronate Business Opportunity | PGK 9389-411 | | X | | | | |
| 120 | | Actonel (risedronate sodium tablets) Product Monograph | PGK 15481-541 | | X | | | | |
| 121 | | Fleisch, Chemistry and Mechanisms of Action of Biphosphonates | | PX 6 | X | | | | |
| 122 | | P&G's Initial Disclosure | | | X | | | | |
| 123 | | 2001-02 U.S. Marketing Plan Recommendation | PG 0018299-0018335 | DX 46 | | H, A | | | |
| 124 | | Financials – Actonel TRx's (Retail, MO & LTC- in 000s) | PG 0078571-0078584 | DX 60 | X | | | | |
| 125 | | Dr. Jesse David CV | | | | R, H, A | | | |
| 126 | | Norwich Division – Product Development Biweekly Report: New Diphosphonates and Structure/Activity Relationships | PG 0034070 | DX 129 | X | | | | |
| 127 | | Coxon et al., Phosphonocarboxylate inhibitors of Rab geranylgeranyl transferase disrupt the prenylation and membrane localization of Rab proteins in osteoclasts in vitro and in vivo | | DX 132 | | H, A | | | |
| 128 | | Bruce Booth and Rodney W. Zemmel, The Search for Blockbuster Drugs, The McKinsey Quarterly (Mar. 9, 2006). | PG0187902 – PG0187905 | DX 134 | X | | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

| DTX No. | Date of Doc. | Description | Bates Range | Depo. Ex. No. | ADMISSION | | RESOLUTION | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | No Obj | Obj Basis | Notes | Admitted | Date |
| 129 | | Business Week Telephone Interview | PGK0009090 - PGK0009108 | | | MD (Repeat of DTX 117) | | | |
| 130 | | Robert G. Cooper, Winning at New Products (3d. Ed. 2001). | | | X | | | | |
| 131 | | US Actonel Competitive Summary (Apr. 22, 2004) | PG0063939 - PG0063963 | DX 59 | X | | | | |
| 132 | | Marketing Plan Presentation | PGK00013626 - PGK00013714 | DX 137 | X | | | | |
| 133 | | | PG0094413 | DX 138 | X | | | | |
| 134 | | Dr. Lenz CV | | | | R, H | | | |
| 135 | 6/19/1986 | Objectives and Criteria for New Phosphonate Screening | PG 0094222 – 0094227 | | | 106 | | | |

R = Lacks Relevance
H = Hearsay (FRE 802)
403 = Unduly Prejudicial (FRE 403)
106 = Partial Document/Lacks Context or Foundation (FRE 106)
MD = Multiple Document
MC = Mischaracterizes Evidence
LC = Improper Legal Conclusion
A = Lacks Authentication (FRE 901)

US1DOCS 5722206v1

**EXHIBIT 8**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-940-JJF<br>)<br>)<br>)<br>)<br>) |

**THE PROCTER & GAMBLE COMPANY'S
TRIAL WITNESS LIST**

The operative claims in this matter are set forth in The Procter & Gamble Company's ("P&G") First Amended Complaint, which alleged infringement of United States Patent No. 5,583,122 (the " '122 patent") by Teva Pharmaceuticals USA, Inc. ("Teva"). In response to the First Amended Complaint, Teva asserted various defenses, including non-infringement and invalidity of the '122 patent under 35 U.S.C. §§ 102, 103, and 112.

Subsequently, Teva stipulated to infringement of claims 4, 12, 14, 16, and 23 of the '122 patent. As a result, Teva's remaining defense is that the '122 patent is invalid, an issue on which Teva alone bears the initial burden of proof. Therefore, P&G has no burden of production or proof unless and until Teva meets its burden of establishing a *prima facie* case of patent invalidity. Only if Teva was able to prove a *prima facie* case would P&G be required to present rebuttal evidence that the '122 Patent is indeed valid. If Teva is unable to meet its burden, P&G would have no need to present rebuttal evidence of validity.

Thus, P&G's identification of fact and expert witnesses is based on P&G's current understanding of the arguments Teva is likely to make in attempting to establish a *prima facie*

- 1 -

case of invalidity, based upon the pleadings and discovery in the action to date. To the extent

that Teva intends or attempts to introduce different or additional legal arguments to meet its

burden of proof, P&G reserves its rights to contest those legal arguments, and to present any and

all rebuttal evidence in response to those arguments.

Based on P&G's current understanding of Teva's remaining defenses, the following is a

list of witnesses that P&G presently intends to call to testify at trial, either in person or by

deposition, together with their respective addresses:

| Witness | Address | General Description of Expert Testimony |
|---|---|---|
| James J. Benedict, Ph.D. | 15239 West 77th Drive Arvada, Colorado 80007 | |

| Witness | Address | General Description of Expert Testimony |
|---------|---------|------------------------------------------|
| John Bilezikian, M.D. | Columbia University Medical Center 630 West 168th Street New York, NY 10032 | Dr. Bilezikian is expected to testify about the opinions and information set forth in his expert report, including but not limited to the background of osteoporosis and available methods for treatment in 1985, and the level of ordinary skill in the art. Dr. Bilezikian is also expected to testify that (1) the discovery of risedronate by P&G scientists in 1985 and its use to treat certain metabolic bone diseases was an important invention that fulfilled a long felt, but unsolved need at that time; (2) in conceiving of risedronate and its usefulness in treating osteoporosis and other metabolic bone diseases, P&G scientists succeeded in achieving certain objectives that others had tried, but failed to achieve; (3) the beneficial results of risedronate (e.g., its safety and efficacy) were unexpected in 1985; (4) the use of risedronate to treat osteoporosis and other metabolic bone diseases would not have been obvious to a person of ordinary skill in the art in the mid-1980s in view of the state of the art at that time; and (5) P&G's Actonel® product, which practices the patented invention, is successful at treating osteoporosis, the condition for which it is most often prescribed, and has advantages over some of the other available treatments. Dr. Bilezikian is also expected to testify that the '122 patent claims are not anticipated by or obvious in view of the '406 patent claims and that the '406 patent claims are not anticipated by or obvious in view of the '122 patent claims. Dr. Bilezikian may also offer rebuttal testimony to any opinions or other testimony offered by Teva. |
| Timothy B. Brown | 1655 Fairway Crest Loveland, Ohio 45140 | |
| David Eastman, Ph.D. | 10640 Mill Road Cincinnati, Ohio 45240 | |
| Lawrence Flora* | 3664 Winter Hill Drive Hamilton, Ohio 45011 | |
| Benjamin F. Floyd, Ph.D.* | 15 Annandale Lane Cincinnati, Ohio 45246 | |

---

\*    Presently, P&G intends to offer the testimony of Dr. Floyd and Mr. Flora by deposition

| Witness | Address | General Description of Expert Testimony |
|---|---|---|
| Charles McKenna, Ph.D. | 16625 Pequeno Place Pacific Palisades, California 90272 | Dr. McKenna is expected to testify about the opinions and information set forth in his expert report, including but not limited to the state of the art in the mid-1980s and the level of ordinary skill in the art. Dr. McKenna is also expected to testify that: (1) Drs. Benedict and Perkins conceived of the idea of risedronate prior to the filing of the '406 patent application and were diligent in later reducing the invention to practice; (2) the '122 patent claims are not anticipated by the '406 patent; (3) based upon the state of knowledge in the mid-1980s, none of the prior art asserted by Teva would have made it obvious to one of skill in the art to make or use risedronate for the treatment of metabolic bone diseases, such as osteoporosis; (4) the chemical structure of risedronate was not obvious in view of prior art bisphosphonates in the mid-1980s; and (5) based upon the knowledge in the art in the mid-1980s, the beneficial results of risedronate would have been unexpected. Dr. McKenna may also offer rebuttal testimony to any opinions or other testimony offered by Teva. |
| Jocelyn McOsker | 756 Wards Corner Road Loveland, OH 45140 | |
| Scott C. Miller, Ph.D. | University of Utah Center for Advanced Medical Technologies 729 Arapeen Drive Salt Lake City, Utah 84108 | Dr. Miller is expected to testify about the opinions and information set forth in his expert report, including but not limited to the background of bone structure and the effect of osteoporosis on such structure, the state of the art in the mid-1980s, the methods for testing compounds for use as a treatment for osteoporosis, the unexpected safety and efficacy differences between risedronate and prior art bisphosphonates and the non-obviousness of the '122 patent claims in view of the prior art references cited by Teva. Dr. Miller may also offer rebuttal testimony to any opinions or other testimony offered by Teva. |
| Daniel Smith, Ph.D. | 835 South Sheridan Drive Bloomington, Indiana 47401 | Dr. Smith is expected to testify about the opinions and information set forth in his expert report, including but not limited to the commercial success of Actonel® and its relationship to the invention of the '122 patent. Dr. Smith may also offer rebuttal testimony to any opinions or other testimony offered by Teva. |

| Witness | Address | General Description of Expert Testimony |
|---|---|---|
| Jerry D. Voight, Esq. | Finnegan Henderson Stanford Research Park 3300 Hillview Avenue Palo Alto, California 94304 | Mr. Voight is expected to testify about the opinions and information set forth in his expert report, including but not limited to background on patent interference practices and procedure and the applicability of the two-way test for obviousness-type double patenting under the circumstances of this case. Mr. Voight may also offer rebuttal testimony to any opinions or other testimony offered by Teva. |
| David Wiemer, Ph.D. | 7 Heather Circle Iowa City, Iowa 52245 | Dr. Wiemer is expected to testify about the opinions and information set forth in his expert report, including but not limited to the state of the art in the mid-1980s, the level of ordinary skill in the art, and the written description support in the '543 application for claims 4, 12, 14, 16 and 23 of the '122 patent. Dr. Wiemer may also offer rebuttal testimony to any opinions or other testimony offered by Teva. |
| Kim Zerby, Esq. | 6248 Fay Court Loveland, Ohio 45140 | |

EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

THE PROCTER AND GAMBLE COMPANY,  )
                                          )
          Plaintiff,                   )
     v.                                )     C.A. No. 04-940 (JJF)
                                            )
TEVA PHARMACEUTICALS, INC.        )
                                            )
          Defendant.              )

## TEVA USA'S WITNESS LIST

Teva USA may call the following witnesses at trial either in person or by

deposition:

      James Benedict
      15239 West 77th Drive
      Arvada, CO 80007

      Timothy Brown
      1655 Fairway Crest
      Loveland, OH

      David Eastman
      10640 Mill Road
      Cincinnati, OH

      Benjamin Floyd
      15 Annadale Lane
      Cincinnati, OH 45246

      David Suter
      3620 Blue Heron Lane,
      Rochester Hills, MI

      Kim Zerby
      6248 Fay Court
      Loveland, OH 45140

**Teva USA's Expert Witnesses**

> George R. Lenz, Ph.D., M.B.A.
> 6 Apple Blossom Road
> Andover, MA 01810-5402

Dr. Lenz will testify in accordance with the expert report he submitted in this case. In

addition, he may respond to the testimony presented on behalf of P&G.

> Jesse David, Ph.D.
> National Economic Research Associates, Inc.
> 1166 Avenue of the Americas
> New York, NY 10036

Dr. David will testify in accordance with the expert report he submitted in this case. In

addition, he may respond to the testimony presented on behalf of P&G.

.

**EXHIBIT 10**

**<u>P&G's Initial Deposition Designations and Teva USA's Objections and Counter-<br>Designations</u>**

E =  calls for expert opinion from a lay witness or from an individual that has not been<br>
            identified as an expert in this action (Rule 701).<br>
H =  hearsay (Rule 801/802)<br>
I =  incomplete<br>
L =  lack of personal knowledge<br>
O =  includes objection from attorney or colloquy<br>
N =  lack of foundation (Rule 611(c))<br>
R =  relevancy (lack of )(Rule 401/402)<br>
V =  vague or ambiguous (Rule 611(a))

| Deponent | P&G Designation | Objection | Teva USA Counter-Designation[1] |
|---|---|---|---|
| L. Flora | 6:8-15 | | |
| L. Flora | 7:2-14 | | |
| L. Flora | 9:3-12:21 | R | |
| L. Flora | 13:10-14:1 | | |
| L. Flora | 15:8-16:11 | R | 16:17-23, 18:5-12 |
| L. Flora | 20:7-9 | | |
| L. Flora | 21:1-8 | | |
| L. Flora | 24:7-19 | R | 22:24-24:6 |
| L. Flora | 25:14-18 | R | 25:9-13 |
| L. Flora | 26:16-29:12 | E, R, O | |
| L. Flora | 33:1-15 | R, I | 33:15-20, 34:11-35:14 |
| L. Flora | 36:7-9 | R | |

---

[1]       The placement of a Teva USA Counter-Designation on a line in the table above does not restrict that designation as a counter to the P&G Deposition Designation on that same line above. Teva USA reserves the right to request that any of P&G's designations, or Teva USA's counter-designations be entered into evidence.

| | | | |
|---|---|---|---|
| L. Flora | 43:20-45:13 | L, R, I | 45:14-46:19 |
| L. Flora | 47:11-14 | R | 47:1-10, 54:19-56:5 |
| L. Flora | 59:23-60:10 | E, R | |
| L. Flora | 84:10-85:12 | R | |
| B. Floyd | 5:7-13 | | |
| B. Floyd | 6:5-18:1 | R, O | 18:7-14 |
| B. Floyd | 22:9-22 | R,O | |
| B. Floyd | 25:3-11 | | |
| B. Floyd | 25:17-27:3 | R, O | |
| B. Floyd | 33:24-35:5 | I | 35:6-10 |
| B. Floyd | 44:11-45:21 | R, O | |
| B. Floyd | 48:12-15 | I | 48:16-49:11 |
| B. Floyd | 49:12-51:8 | R, O | |
| B. Floyd | 61:13-62:15 | R | 71:3-71:7, 71:9-72:16, 75:7-76:9, 80:5-10, 80:12-81:23 |
| B. Floyd | 101:21-102:12 | R | |
| B. Floyd | 109:17-22 | R, I | 109:24-110:17 |

2

**EXHIBIT 11**

## P&G'S OBJECTIONS AND COUNTER-DESIGNATIONS
## TO TEVA'S DEPOSITION TRANSCRIPT DESIGNATIONS[1]

From the deposition of Benjamin Floyd, October 11, 2005:

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 5 | 7 | - | 5 | 13 | | |
| 6 | 5 | - | 7 | 15 | | |
| 8 | 22 | - | 8 | 24 | | |
| 16 | 14 | - | 17 | 5 | 17:4-5 --FM, F | 17:6-7 |
| 17 | 8 | - | 18 | 1 | 17:8-9 -- FM, F | |
| 18 | 7 | - | 18 | 14 | 18:12-14 – F | |
| 35 | 6 | - | 35 | 10 | | 34:9-24<br>35:1-5<br>35:11-17 |
| 48 | 16 | - | 49 | 5 | F, A, H | 39:8-12 |
| 49 | 8 | - | 49 | 11 | F, A, H | 49:6-7 |
| 71 | 3 | - | 71 | 5 | | 71:6-8 |

---

[1] P&G reserves the right to object to any or all designations depending upon the purpose for which they are offered, and depending on the witness(es) through whom Teva intends to offer the testimony. P&G also reserves the right to object to and/or move to exclude designations following the Court's rulings on motions *in limine*, or rulings made prior to or during the trial

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

1

| Page | Line | - | Page | Line | Objections | Counterdesginations |
|------|------|---|------|------|------------|---------------------|
| 71 | 9 | - | 72 | 16 | 72:3-8 -- FM<br>72:9-13 -- F<br>72:14-19 -- FM, F | 72:17-23 |
| 80 | 5 | - | 80 | 10 | 80:5-14 -- FM, F, O | 80:11 |
| 80 | 12 | - | 81 | 23 | F, O | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC =  Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

From the deposition of James Benedict, Ph.D., October 17, 2005

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 7 | 8 | - | 10 | 3 | | 11:18-24, 12:23-13:24, 19:11-13, 19:22-24, 20:1-7, 24:21-24, 25:1-19, 26:1-24, 27:1-22, 42:12-22, 43:8-14, 44:12-24, 45:1-3, 69:15-19 |
| 57 | 14 | - | 57 | 17 | | |
| 57 | 22 | - | 59 | 8 | | |
| 59 | 24 | - | 64 | 20 | | 67:8-15 |
| 64 | 22 | - | 64 | 23 | | |
| 65 | 16 | - | 65 | 24 | | |
| 66 | 11 | - | 66 | 14 | | |
| 99 | 4 | - | 100 | 9 | | |
| 100 | 11 | - | 100 | 24 | 100:18-100:24 – F, O | |
| 101 | 2 | - | 101 | 3 | F, O | |
| 101 | 21 | - | 102 | 17 | 102:15-17 – F, O | 97:13-98:2 |
| 102 | 19 | - | 103 | 2 | 102:19 – F, O | |
| 103 | 4 | - | 103 | 6 | | |
| 103 | 8 | - | 103 | 9 | | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

3

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 177 | 20 | - | 177 | 22 | | |
| 178 | 4 | - | 179 | 2 | 178:7-179:2 – F, O | 116:16-118:9 |
| 179 | 4 | - | 179 | 6 | 179:4-179:6 – F, O | |
| 179 | 23 | - | 181 | 4 | 180:7-15 – F, O | 181:5-182:12 |
| 192 | 13 | - | 193 | 15 | 193:1-15 - F | 194:23-195:15 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC =  Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

From the deposition of David Suter, Esq., October 28, 2005

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|-----------|---------------------|
| 7 | 22 | - | 8 | 22 | R | |
| 9 | 7 | - | 9 | 22 | | |
| 20 | 18 | - | 21 | 4 | | |
| 21 | 12 | - | 21 | 22 | | |
| 24 | 25 | - | 25 | 5 | A, R, F | |
| 34 | 24 | - | 35 | 1 | | 33:2-34:11 |
| 36 | 12 | - | 37 | 20 | | 33:2-34:11 |
| 38 | 1 | - | 38 | 6 | | |
| 39 | 10 | - | 41 | 22 | 39:10-14 – O, LC<br>39:15-25 – R, O, LC<br>40:1-22 – FM, R, P | |
| 42 | 11 | - | 42 | 25 | R | |
| 45 | 8 | - | 45 | 15 | | |
| 46 | 25 | - | 47 | 18 | FM, R, P | 47:19-22 |
| 64 | 16 | - | 66 | 12 | FM, O, R, P | |
| 67 | 7 | - | 67 | 19 | | |
| 68 | 23 | - | 70 | 22 | H, R | 70:23 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

5

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 70 | 24 | - | 70 | 25 | H, R | 70:23; 72:14-17 |
| 71 | 2 | - | 72 | 13 | | |
| 72 | 20 | - | 72 | 23 | R | |
| 73 | 4 | - | 73 | 7 | R, H | |
| 73 | 15 | - | 74 | 3 | R, H | |
| 74 | 11 | - | 74 | 17 | R | |
| 75 | 3 | - | 76 | 4 | R | |
| 76 | 6 | - | 76 | 18 | R | |
| 77 | 1 | - | 78 | 10 | 77:20-78:10 – F, R, P | |
| 83 | 20 | - | 84 | 13 | FM, F, R, P | |
| 84 | 15 | - | 84 | 19 | H, R | |
| 85 | 1 | - | 86 | 16 | H, R<br>86:5-16 – FM, F, R, P | 86:14-20 |
| 86 | 23 | - | 87 | 12 | H, R | |
| 87 | 21 | - | 88 | 24 | 87:21-88:1 – LF, H, R, P<br>88:3-24 – R | |
| 89 | 14 | - | 89 | 22 | R | |
| 89 | 25 | - | | | R, LC | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 90 | 3 | - | | | R, LC | 90:1, 4 |
| 90 | 5 | - | 90 | 10 | FM, R, LC | 90:11 |
| 90 | 12 | - | 91 | 4 | FM, R, LC | 91:5 |
| 91 | 6 | - | 91 | 17 | FM, R, LC | 91:18 |
| 91 | 19 | - | 91 | 24 | | |
| 92 | 2 | - | 92 | 8 | FM, F, R, P | |
| 94 | 5 | - | 94 | 18 | R | |
| 95 | 21 | - | 96 | 14 | R<br>96:9-14 - FM, F, R, P | 112:12-113:5 |
| 96 | 19 | - | 96 | 21 | FM, F, R, P | |
| 97 | 24 | - | 97 | 25 | H, FM, F, R | |
| 98 | 1 | - | 98 | 15 | H, FM, F, R | |
| 99 | 2 | - | 99 | 4 | FM, O, F, R | 99:5 |
| 99 | 6 | - | | | FM, O, F, R | 99:5 |
| 99 | 8 | - | 99 | 11 | FM, O, F, R, LC | 99:12 |
| 99 | 13 | - | | | FM, O, F, R, LC | 99:12 |
| 99 | 15 | - | 99 | 16 | FM, O, F, R, LC | 99:17 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 99 | 18 | - | | | FM, O, F, R, LC | 99:17 |
| 99 | 20 | - | 99 | 21 | FM, O, F, R, LC | 99:22 |
| 99 | 25 | - | | | FM, O, F, R, LC | 99:22 |
| 100 | 2 | - | 100 | 4 | F, R, P | |
| 100 | 7 | - | 100 | 10 | F, R, P | |
| 104 | 3 | - | 104 | 21 | R<br>104:15-21 - F, R, P | 112:12-113:5 |
| 105 | 24 | - | 106 | 6 | H, O, F, R | 106:7 |
| 106 | 8 | - | | | H, O, F, R | 106:7 |
| 106 | 10 | - | 107 | 6 | H, O, F, R | 107:7-8 |
| 107 | 11 | - | 107 | 14 | H, O, F, R | 107:7-8 |
| 107 | 23 | - | 108 | 5 | F, R, P | |
| 113 | 9 | - | 113 | 17 | FM, F, R, P | 112:12-113:5; 113:18-19 |
| 113 | 20 | - | 114 | 2 | FM, F, R, P | 113:18-19 |
| 122 | 2 | - | 122 | 12 | FM, F, R | 122:13 |
| 122 | 14 | - | | | FM, F, R | 122:13 |
| 122 | 16 | - | 122 | 21 | FM, F, R | |

*Legend of P&G's Objections:

A = Lacks authenticity (FRE 901/902)          LC = Legal conclusion

R = Lacks relevance (FRE 401/402)             NR = Non-responsive/move to strike

H = Hearsay (FRE 802)                          P = Unduly prejudicial/confusing (FRE 403)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)     FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 123 | 16 | - | 122 | 22 | FM, F, R | |
| 124 | 15 | - | 125 | 12 | F, R | 125:18 |
| 125 | 14 | - | | | | |
| 126 | 12 | - | 126 | 24 | FM, F, R, H | 126:25 |
| 127 | 1 | - | 127 | 4 | FM, F, R, H | 126:25 |
| 127 | 6 | - | 127 | 10 | FM, R, P (no testimony cited) | 127:11 |
| 130 | 17 | - | 131 | 10 | FM, F, R, P | |
| 132 | 22 | - | 133 | 11 | R | |
| 134 | 3 | - | 134 | 8 | R | |
| 134 | 20 | - | 134 | 22 | R | |
| 135 | 17 | - | 135 | 23 | R, H | |
| 138 | 12 | - | 138 | 22 | R | |
| 167 | 3 | - | 167 | 23 | FM, F, R, P | 169:1-14 |
| | | | | | | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

From the deposition of Kim W. Zerby, Esq., December 8, 2005:

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 8 | 11 | - | 8 | 25 | | |
| 9 | 13 | - | 9 | 17 | | |
| 10 | 3 | - | 10 | 19 | | |
| 12 | 13 | - | 12 | 25 | | |
| 13 | 1 | - | 13 | 25 | | |
| 14 | 1 | - | 15 | 4 | | |
| 19 | 20 | - | 19 | 6 | | |
| 22 | 19 | - | 22 | 21 | H, R, P (no testimony) | |
| 23 | 17 | - | 24 | 16 | 23:17-21 – R | |
| 25 | 9 | - | 25 | 17 | H, R | |
| 29 | 20 | - | 29 | 23 | FM, F, R | 29:24-30:3 |
| 30 | 4 | - | 30 | 8 | | |
| 30 | 12 | - | 30 | 21 | | |
| 32 | 20 | - | 33 | 20 | FM, F, R | |
| 44 | 7 | - | 46 | 12 | R, H, O, LC | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC =  Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 49 | 13 | - | 54 | 21 | FM, R, F, P | 54:22-55:10 |
| 55 | 11 | - | 55 | 17 | | 55:18 |
| 55 | 20 | - | 55 | 25 | | 55:18; 56:1 |
| 56 | 2 | - | 56 | 5 | | 56:6 |
| 56 | 7 | - | 56 | 11 | | 56:6 |
| 64 | 14 | - | 65 | 2 | FM, F, H, R | |
| 65 | 14 | - | 65 | 20 | R, H | |
| 66 | 2 | - | 66 | 20 | R, H | |
| 67 | 2 | - | 70 | 1 | R, F, FM, P | |
| 72 | 13 | - | 72 | 14 | R, LC | 72:15-18 |
| 72 | 19 | - | 73 | 24 | R, LC | 72:15-18 |
| 73 | 9 | - | 73 | 13 | R, LC | |
| 73 | 15 | - | 73 | 20 | R, LC | |
| 74 | 5 | - | 77 | 18 | FM, F, R, H, LC | 77:19 |
| 77 | 20 | - | | | FM, F, R, H, LC | 77:19 |
| 78 | 4 | - | 78 | 6 | | 78:7 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC =  Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 78 | 8 | - | 78 | 15 | FM, F, O, LC | 78:7; 78:16 |
| 78 | 17 | - | 78 | 21 | FM, F, R, LC<br>78:20-21 – R, P (no testimony) | |
| 79 | 13 | - | 79 | 16 | FM, F, R, LC | 79:17 |
| 79 | 18 | - | | | FM, F, R, LC | 79:17 |
| 81 | 2 | - | 81 | 12 | R | |
| 82 | 3 | - | 83 | 20 | FM, F, R, LC | |
| 83 | 11 | - | 83 | 16 | FM, F, R, LC | |
| 84 | 4 | - | 84 | 20 | H, R, LC | 84:21-22 |
| 84 | 23 | - | 85 | 4 | H, R, LC | 84:21-22 |
| 85 | 6 | - | 85 | 14 | FM, F, R | 85:15-19 |
| 86 | 23 | - | 86 | 25 | | 87:1-3 |
| 87 | 9 | - | 87 | 20 | H, R | 87:1-3; 87:21 |
| 87 | 22 | - | 87 | 25 | FM, F, H, R | 87:21 |
| 88 | 2 | - | 88 | 5 | FM, F, R | 88:1 |
| 88 | 8 | - | 88 | 10 | | 88:1; 88:6-7 |
| 88 | 17 | - | 88 | 17 | P (incomplete question) | 88:21 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

12

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 88 | 22 | - | 89 | 2 | FM, F, R | 88:21; 89:3 |
| 89 | 8 | - | 89 | 12 | FM, F, R | 89:3; 89:12 |
| 89 | 14 | - | 90 | 14 | FM, F, R | 89:12; 90:15 |
| 98 | 24 | - | 99 | 13 | FM, F, R, H, LC | |
| 100 | 17 | - | 102 | 17 | FM, F, R, H | |
| 102 | 19 | - | 103 | 6 | R, H | |
| 103 | 9 | - | 103 | 13 | FM, F, R, H | 103:14 |
| 193 | 15 | - | 104 | 1 | FM, F, R, H | 103:14; 104:2 |
| 104 | 3 | - | 104 | 8 | FM, F, R, H, LC | 104:2; 104:9 |
| 104 | 10 | - | 104 | 16 | FM, F, R, H, LC | 104:9; 104:17 |
| 104 | 18 | - | 104 | 20 | FM, F, R, H, LC | 104:17 |
| 107 | 15 | - | 108 | 2 | FM, F, R, H | 108:3-4 |
| 108 | 5 | - | 109 | 6 | FM, F, R, H, LC | 109:7 |
| 109 | 8 | - | 110 | 5 | FM, F, R, H, LC | 109:7; 110:6 |
| 110 | 7 | - | 110 | 16 | FM, F, R, H, LC | 110:6; 110:17 |
| 110 | 18 | - | 110 | 23 | FM, F, R, H, LC | 110:17; 110:24 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

13

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 111 | 11 | - | 111 | 21 | H, R, LC | |
| 111 | 23 | - | 111 | 25 | R | |
| 112 | 13 | - | 112 | 17 | R, H | |
| 112 | 20 | - | 113 | 10 | FM, R, H | |
| 114 | 8 | - | 114 | 18 | FM, F, R | 114:19-22 |
| 114 | 23 | - | 116 | 5 | FM, F, R, H, LC | |
| 127 | 6 | - | 133 | 13 | FM, F, R, H, LC, P | |
| 133 | 15 | - | 134 | 1 | R | |
| 135 | 23 | - | 136 | 1 | R | 136:2 |
| 136 | 3 | - | 136 | 12 | FM, R | 136:2; 136:13 |
| 136 | 14 | - | 137 | 1 | FM, R | 136:13; 137:2 |
| 137 | 3 | - | 137 | 17 | FM, R | 137:2 |
| 137 | 23 | - | 138 | 2 | R, H, A | |
| 138 | 15 | - | 138 | 17 | FM, F, R, H, A | 138:18-19 |
| 138 | 20 | - | 139 | 18 | FM, F, R, H, A | 138:18-19; 139:19 |
| 139 | 20 | - | 139 | 22 | FM, R | 139:19 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)          LC = Legal conclusion

R = Lacks relevance (FRE 401/402)             NR = Non-responsive/move to strike

H = Hearsay (FRE 802)                         P = Unduly prejudicial/confusing (FRE 403)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)    FM = Objection to form

14

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 139 | 24 | - | | | FM, F, A, H, R | 139:23; 139:25-140:1 |
| 140 | 2 | - | 140 | 21 | FM, F, A, H, R | 139:25-140:1; 140:22 |
| 140 | 23 | - | 145 | 5 | 140:23- 141:15 – FM, F, R, P<br><br>FM, R | 140:22; 145:6-14 |
| 145 | 15 | - | | | FM, R | 145:6-14 |
| 149 | 1 | - | 149 | 3 | R | 149:4 |
| 149 | 8 | - | 149 | 23 | FM, F, R, LC | 149:4; 149:24-25 |
| 150 | 3 | - | 150 | 5 | FM, F, R | 149:24-25 |
| 151 | 6 | - | 151 | 8 | FM, F, R | 151:9 |
| 151 | 10 | - | | | FM, F, R | 151:9 |
| 206 | 18 | - | 206 | 24 | FM, F, R | 206:25-207:1 |
| 207 | 2 | - | 207 | 5 | FM, O, F, R, LC | 206:6 |
| 207 | 7 | - | 207 | 5 | Not a proper designation | Not a proper designation |
| 215 | 14 | - | 215 | 21 | FM, F, R, O, LC | 215:22 |
| 215 | 23 | - | 216 | 17 | FM, F, R, O, LC | 215:22 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

15

From the deposition of Timothy B. Brown, December 9, 2005

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 8 | 5 | - | 8 | 18 | | |
| 9 | 16 | - | 10 | 13 | | |
| 10 | 19 | - | 13 | 16 | 10:22-12:7—R<br>12:15-16—FM, F<br>12:23-13:2—F<br>13:14-16—F | |
| 18 | 1 | - | 19 | 11 | 18:5-7—F<br>18:8-17--H<br>19:5-11—F | 19:12-15 |
| 19 | 16 | - | 19 | 18 | | |
| 19 | 24 | - | 21 | 5 | 20:22-21:5—F | 21:6-11 |
| 21 | 12 | - | 22 | 10 | | 22:11-23:10 |
| 28 | 20 | - | 28 | 22 | F | |
| 29 | 6 | - | 29 | 16 | R, F, FM | |
| 30 | 11 | - | 30 | 17 | | |
| 31 | 5 | - | 31 | 8 | | 31:9-22 |
| 39 | 22 | - | 39 | 25 | | |
| 40 | 13 | - | 40 | 20 | 40:13-19—A, H, F<br>40:20—F | 40:21 |
| 40 | 22 | - | 41 | 9 | 40:22-41:9—F | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|-----------|---------------------|
| 44 | 4 | - | 45 | 7 | 44:10-45:7—F | 43:7-44:3<br>45:6-25 |
| 46 | 6 | - | 46 | 17 | F | 46:1-5<br>46:18-47:6<br>47:12-48:7 |
| 61 | 9 | - | 62 | 3 | | 62:4-23 |
| 64 | 5 | - | 64 | 13 | 64:9-13--F | 64:14-17 |
| 64 | 18 | - | 66 | 5 | 64:18-19—F<br>64:23-25—F, H<br>65:1-6—FM, F, R<br>65:14-23—F, H<br>65:24-66:5—F | |
| 66 | 16 | - | 67 | 6 | 67:6—FM | 66:6-15<br>67:7 |
| 67 | 10 | - | 69 | 14 | 68:11-23—FM<br>69:5-10—F<br>69:11-14—FM, F | 69:15 |
| 69 | 16 | - | 69 | 20 | 69:16-20—FM, F | 69:21 |
| 69 | 22 | - | 70 | 10 | 69:22-70-1—FM, F<br>70:2-10—F | 70:25-71:8 |
| 75 | 20 | - | 75 | 22 | | 75:23-76:11 |
| 76 | 17 | - | 78 | 10 | 76:22-77-17—F<br>77:18-78:6—H, F, O | 78:11-25 |
| 79 | 1 | - | 80 | 8 | 79:3-18—H<br>79:19-23—F | 80:9-81:9 |
| 106 | 6 | - | 106 | 19 | 106:6-9 – F<br>106:10-14 – FM | 106:20-107:7 |
| 108 | 6 | - | 108 | 21 | 108:14-21 – F | 108:22-109:1 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)                     LC = Legal conclusion

R = Lacks relevance (FRE 401/402)                        NR = Non-responsive/move to strike

H = Hearsay (FRE 802)                                    P = Unduly prejudicial/confusing (FRE 403)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)               FM = Objection to form

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 133 | 8 | - | 135 | 14 | 134:18-135:5 – H<br>135:6-14 –F | 135:15-18 |
| 136 | 3 | - | 136 | 16 | 136:10-16 –F, R | |
| 148 | 4 | - | 148 | 7 | | 148:9-22 |
| 149 | 10 | - | 155 | 19 | 149:17-150:4 – F<br>150: 5-11 –H<br>150:12-151:2 – H, F, A<br>151:11-20 – H, F, A<br>152:1-5 – FM<br>154:3-14 – H, F, A<br>156:2-18 –H, F, A | |
| 177 | 11 | - | 178 | 8 | 178:5-8 -- H | 178:9-178:25 |
| 179 | 7 | - | 183 | 11 | 179:8-180:16 – H, F<br>181:8-17 – F, R<br>181:21-183: 2 – H, F<br>183:3-11 – F, R | 179:1-7 |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

18

From the deposition of David Eastman, Ph.D., December 13, 2005

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 8 | 11 | - | 8 | 25 | | |
| 10 | 2 | - | 12 | 1 | | 12:2-8 |
| 12 | 9 | - | 13 | 22 | | |
| 14 | 17 | - | 15 | 15 | | 15:16-21; 16:23-17:7; 17:15-19 |
| 17 | 19 | - | 19 | 10 | | |
| 21 | 6 | - | 21 | 10 | | |
| 21 | 20 | - | 23 | 15 | | 23:16 |
| 23 | 17 | - | 25 | 20 | 23:22-24:2 – F | 23:16 |
| 26 | 15 | - | 26 | 22 | | |
| 27 | 2 | - | 27 | 10 | | |
| 29 | 1 | - | 29 | 14 | | |
| 29 | 22 | - | 31 | 23 | | |
| 31 | 25 | - | 35 | 22 | 32:10-15 – F, O<br>25:9-20 – FM<br>30:7-19 – F, O<br>31:25-32:15 – F, O | |
| 41 | 7 | - | 41 | 10 | | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

19

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 41 | 21 | - | 42 | 7 | | |
| 44 | 1 | - | 44 | 19 | | |
| 44 | 21 | - | 44 | 25 | 44:22-45:6 – R | 45:24 – 46:15 |
| 45 | 2 | - | 45 | 11 | | |
| 45 | 13 | - | 45 | 23 | | |
| 46 | 16 | - | 46 | 17 | | |
| 46 | 19 | - | 47 | 9 | 47:7-9 – R, FM | |
| 59 | 25 | - | 60 | 1 | | |
| 60 | 21 | - | 61 | 2 | | |
| 61 | 4 | - | 61 | 5 | | 61:6 – 62:18 |
| 64 | 3 | - | 64 | 12 | FM | |
| 64 | 22 | - | 64 | 24 | R, F | |
| 65 | 1 | - | 65 | 5 | R, F | |
| 65 | 7 | - | 65 | 13 | R, F, O | 65:14 |
| 65 | 15 | - | 65 | 19 | R, F, O | |
| 93 | 18 | - | 94 | 3 | | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)      LC = Legal conclusion

R = Lacks relevance (FRE 401/402)      NR = Non-responsive/move to strike

H = Hearsay (FRE 802)      P = Unduly prejudicial/confusing (FRE 403)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)      FM = Objection to form

20

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|------------|---------------------|
| 94 | 13 | - | 95 | 10 | R | |
| 96 | 10 | - | 96 | 21 | R, H, F, A | |
| 98 | 17 | - | 99 | 1 | R, F, FM | |
| 99 | 9 | - | 100 | 19 | R, F, FM | |
| 102 | 15 | - | 102 | 19 | R, F, FM, O | |
| 103 | 2 | - | 103 | 18 | R, F, FM, O | 103:19 |
| 103 | 20 | - | 105 | 9 | R, F, FM, O | 103:19 |
| 105 | 20 | - | 106 | 2 | R, F, FM, O | |
| 106 | 9 | - | 106 | 15 | R, F, FM, O | 106:16 |
| 106 | 17 | - | 107 | 25 | R, F, FM, O | 106:16 |
| 108 | 2 | - | 108 | 9 | R, F, FM, O | 108:1 |
| 109 | 14 | - | 109 | 21 | R, F, FM, O | 109:22 |
| 109 | 23 | - | 110 | 2 | R, F, FM, O | 109:22 |
| 117 | 24 | - | 119 | 5 | | |
| 119 | 17 | - | 119 | 20 | | |
| 119 | 22 | - | 119 | 24 | | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC = Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

21

| Page | Line | - | Page | Line | Objections | Counterdesignations |
|------|------|---|------|------|-----------|---------------------|
| 120 | 2 | - | 120 | 22 | | |
| 130 | 25 | - | 131 | 4 | R | 121:9 – 122:4; 122:15 – 123:4 |
| 132 | 3 | - | 132 | 6 | F, P | 132:7 |
| 132 | 8 | - | 132 | 18 | F, P | |
| 132 | 20 | - | 132 | 21 | F, P | |
| 175 | 15 | - | 175 | 17 | | 175:18 – 176:6; 176:13 – 177:16 |
| 177 | 17 | - | 178 | 1 | | |
| 178 | 15 | - | 179 | 1 | | |
| 180 | 19 | - | 181 | 11 | R, F | |
| 186 | 8 | - | 186 | 9 | R | 186:10-12; 186:18 – 197:9 |
| 187 | 10 | - | 187 | 16 | R | |
| 197 | 16 | - | 197 | 25 | | |

**\*Legend of P&G's Objections:**

A = Lacks authenticity (FRE 901/902)

R = Lacks relevance (FRE 401/402)

H = Hearsay (FRE 802)

O = Improper opinion (FRE 701/702)

F = Lacks foundation/speculative (FRE 602)

LC =  Legal conclusion

NR = Non-responsive/move to strike

P = Unduly prejudicial/confusing (FRE 403)

FM = Objection to form

EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE PROCTER & GAMBLE COMPANY,            )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )      Civil Action No. 04-940-JJF
                                          )
TEVA PHARMACEUTICALS USA, INC.,           )
                                          )
                    Defendant.            )
                                          )

## BRIEF STATEMENT OF WHAT THE PROCTER & GAMBLE COMPANY INTENDS TO PROVE IN SUPPORT OF ITS CLAIMS

The operative claims in this matter are set forth in The Procter & Gamble Company's ("P&G") First Amended Complaint, which alleges infringement by Teva Pharmaceuticals USA, Inc. ("Teva") of United States Patent No. 5,583,122 (the "'122 patent"). In response to the First Amended Complaint, Teva asserted various defenses, including non-infringement and invalidity of the '122 patent under 35 U.S.C. §§ 102, 103, and 112.

Subsequently, Teva stipulated to infringement of claims 4, 12, 14, 16, and 23 of the '122 patent. As a result, Teva's remaining defense is that the '122 patent is invalid, an issue on which Teva alone bears the initial burden of proof. Therefore, P&G has no burden of production or proof unless and until Teva meets its burden of establishing a *prima facie* case of patent invalidity. Only if Teva was able to establish a *prima facie* case would P&G be required to present rebuttal evidence that the '122 patent is indeed valid. If Teva is unable to meet its burden, P&G would have no need to present rebuttal evidence of validity.

Thus, P&G's brief statement of what it intends to prove at trial in support of its claims is based on P&G's current understanding of the arguments Teva is likely to make in attempting to

- 1 -

establish a *prima facie* case of invalidity, based upon the pleadings and discovery in the action to date. To the extent that Teva intends or attempts to introduce different or additional arguments to meet its burden of proof, P&G reserves its rights to contest those arguments, and to present any and all rebuttal evidence in response to those arguments, and will not be bound by the summary of evidence presented herein. A brief statement describing P&G's rebuttal evidence, if necessary, is set forth below.

1.      The '122 patent was filed on December 6, 1985 and is a continuation-in-part of an application filed on December 21, 1984, application Serial No. 684,543 (the "'543 application"). The '122 patent issued on December 10, 1996 with two former P&G employees, Dr. James Benedict and Dr. Christopher Perkins, as the named inventors.

2.      The '122 patent has 23 claims. P&G has asserted claims 4, 12, 14, 16 and 23 against Teva. Claims 4, 16, and 23 are specifically directed to the active ingredient of P&G's Actonel® product: [2-(3-pyridyl-1-hydroxyethane diphosphonic acid] monosodium salt, also known as risedronate sodium.[1] Claim 4 is an independent claim that covers the risedronate compound. Claims 12 and 14 are directed to pharmaceutical compositions that would cover a variety of compounds including risedronate. Claim 16, which depends from claim 14, is directed to the pharmaceutical composition that is contained in Actonel®. Claim 23, which is a dependent claim, covers methods of treating diseases associated with abnormal calcium and phosphate metabolism comprising administering Actonel® to a person in need of such treatment.

3.      In alleging that the asserted claims of the '122 patent are invalid, Teva primarily relies on another P&G patent, U.S. Patent No. 4,761,406 (the "'406 patent"), which was filed on June 6, 1985 and issued on August 2, 1988. The '406 patent claims a method for treating

---

[1]      "Risedronate" as used herein encompasses both the acid and the salt form, i.e., [2-(3-pyridyl-1-hydroxyethane diphosphonic acid] and [2-(3-pyridyl-1-hydroxyethane diphosphonic acid] monosodium salt.

osteoporosis with a polyphosphonate[2] according to a schedule of (a) administration of the polyphosphonate, (b) rest and (c) repeat. The '406 patent lists numerous bisphosphonates[3] for use in the method, including 2-(2-pyridyl)-1-hydroxyethane-1, 1-diphosphonic acid ("2-pyr EHDP").[4] Even though the '406 patent application was filed almost six months after the '543 application to which the '122 patent claims priority, Teva contends that the '406 patent is prior art to the '122 patent, and that it anticipates claims 12 and 14 of the '122 patent and renders claims 4, 16, and 23 obvious. Teva asserts that the '543 application does not have sufficient written support for the claims at issue, and that the '122 patent is therefore not entitled to the earlier priority date. Teva also contends that, even if the '122 patent is entitled to the earlier priority date, it is invalid as a result of obviousness-type double patenting.

4.    P&G will present evidence and testimony that the '406 patent is not prior art. First, the '406 patent is not prior art to the asserted '122 patent because the '122 patent is entitled to the priority date of the '543 application. Teva asserts that the '543 application lacks written description support for the asserted '122 patent claims because the '543 application does not provide the identical structures or specifically name risedronate. However, the claimed compounds, including risedronate, are encompassed by the genus and subgenus structures set forth in the '543 application. P&G will present evidence that there are ample blaze marks that would lead one of ordinary skill in the art reading the '543 application to the claimed compounds, including risedronate. Second, even if the '122 patent was not entitled to the benefit of the filing date of the '543 application, the '406 patent still would not be prior art because the

---

[2]    A "polyphosphonate" is a compound having more than one phosphonate group ($-PO_3H_2$) as part of its molecular structure.
[3]    A "bisphosphonate" is a polyphosphonate having two phosphonate groups ($-PO_3H_2$) as part of its molecular structure.
[4]    Structurally, this compound differs from risedronate in that the nitrogen atom present on the pyridine ring is in a different position. In risedronate, the nitrogen atom is in the "3-position"; in 2-pyr EHDP, the nitrogen atom is in the "2-position."

risedronate compound described in and encompassed by the '122 patent claims was conceived and reduced to practice before the filing of the '406 patent application.

     5.     Even apart from the fact that the '406 patent is not prior art to the '122 patent, the '406 patent does not render obvious claims 4, 16, and 23 of the '122 patent – the claims that are directed to risedronate – because it would not have been obvious to one of ordinary skill in the art to modify the compounds disclosed in the '406 patent, most notably 2-pyr EHDP, to make risedronate. There is nothing in the '406 patent (or in the other prior art identified by Teva) that suggests or provides a motivation to modify 2-pyr EHDP to make risedronate or that doing so would be reasonably likely to succeed in producing a useful compound. There is no indication that such a modification would produce a compound that would be safe and effective for treatment of a disease associated with abnormal calcium and phosphate metabolism. Nor is there any indication in the '406 patent that such a modification would be otherwise advantageous. Given the poor understanding then (and now) of the relationship between bisphosphonate structure and bone activity, one of ordinary skill in the art would have had no expectation that modifying 2-pyr EHDP to form risedronate would result in a compound that had an improved, or even equivalent, safety/efficacy profile compared to 2-pyr EHDP. The unpredictability of the effect of small changes in structure on safety and efficacy of a compound was also well recognized in the art in 1984-1985. Given the unpredictability of the effect of small changes in structure of bisphosphonates, one of ordinary skill in the art in 1984-1985 would not have expected risedronate to have similar properties to other structurally-similar bisphosphonates, and as a result, the prior art bisphosphonate compounds do not render risedronate obvious. In fact, P&G researchers repeatedly discovered that small changes in structure could have significant, yet unpredictable, effects on a compound's activity.

- 4 -

6.      Teva also has identified several other prior art patents that it claims alone, or in combination with the '406 patent, render the '122 patent obvious. For the same reasons that the '406 patent does not render the '122 patent obvious, the other prior art references also do not render the '122 patent claims obvious.

7.      In addition, there is substantial objective evidence of non-obviousness of the asserted claims. Due to the unpredictability of the properties of bisphosphonates based upon their structure, the improved safety and efficacy of the claimed bisphosphonates were unexpected. In particular, P&G's testing of risedronate yielded the unexpected result that it was significantly more potent, and relatively less toxic, than other bisphosphonates that it had tested, including 2-pyr EHDP. As a result of its improved safety/efficacy profile, risedronate solved the long felt, but unmet need for a better bisphosphonate. At the time of the invention of risedronate, there were limited options available for the treatment of diseases associated with abnormal calcium and phosphate metabolism, including osteoporosis. The non-obviousness of risedronate is also evidenced by the fact that, since introduction of Actonel® in 1998, P&G has achieved commercial success, with sales of more than $2 billion, in spite of heavy competition from other osteoporosis drugs. Finally, Teva's decision to offer a generic form of Actonel® that admittedly infringes the claimed invention is further proof that the asserted claims of the '122 patent covering risedronate are non-obvious.

8.    Teva's final defense is that the '122 patent is invalid as a result of obviousness-type double patenting in view of the '406 patent. To prove such a basis of invalidity, either a one- or two-way test is required.[5]

9.    Here, the two-way test applies because the evidence demonstrates that P&G acted diligently throughout the examination and interference proceedings, and that the delay in the ultimate issuance of the '122 patent was solely administrative based upon the interference proceeding at the Patent Office and subsequent appeal to the Federal Circuit.

10.    Applying either the one- or the two-way test, Teva cannot prove that the '406 patent claims render the '122 patent claims obvious for the reasons described above. For the two-way test, Teva further cannot prove that the '122 patent claims render the '406 patent claims obvious because the specific dosing regimen as claimed in the '406 patent is neither disclosed nor suggested by the '122 patent claims.

11.    In addition, as set forth *supra*, there is substantial objective evidence of non-obviousness of the asserted claims. Thus, were Teva able to establish a *prima facie* case that the asserted '122 patent claims are invalid, P&G will present evidence and testimony to successfully rebut that preliminary showing.

---

[5]    For a one-way test, Teva must show that the claims of the '122 patent are rendered obvious by the claims of the '406 patent. Under certain circumstances, a two-way test is applied. A two-way test is applied when an applicant could not have filed all of its claims in one application and Patent Office delays are solely responsible for a second-filed application issuing before a first-filed application. Pursuant to such a test, Teva must show that the claims of the '122 patent are rendered obvious by the claims of the '406 patent and that the claims of the '406 patent are rendered obvious by the claims of the '122 patent.

- 6 -

**EXHIBIT 13**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,    ) | |
| )| |
| Plaintiff,    ) | |
| )| |
| v.    ) | Civil Action No. 04-940 (JJF) |
| )| |
| TEVA PHARMACEUTICALS USA, INC.    ) | |
| )| |
| Defendant. | |

## TEVA USA'S STATEMENT OF
## INTENDED PROOFS

1.      Teva USA will offer evidence at trial demonstrating that the asserted claims of the '122 patent are invalid under 35 U.S.C. §§ 102 and 103 because the claimed invention was disclosed in and obvious from the prior art. In addition, Teva USA will prove that the '122 patent is invalid for obviousness-type double patenting in light of U.S. Patent No. 4,761,406 ("the '406 patent"), which was also assigned to Procter & Gamble.

### A.      Background

2.      The asserted claims of the '122 patent relate to a class of diphosphonic acid compositions comprising a pyridine group (a six-membered ring structure in which one of the members is a nitrogen atom and the others are carbon atoms). The patent includes claims to one such compound, 2-(3-pyridyl)-hydroxyethane diphosphonic acid (risedronate, or "3-pyr-EHDP"), as well as to a method of treating diseases associated with abnormal calcium and phosphate metabolism with 3-pyr-EHDP. The '122 patent was not issued until December 10, 1996 (more than 11 years after its filing). The issuance of the '122 patent was delayed by P&G's activities during prosecution,

including the abandonment of claims held to be allowable, the provoking of a patent

interference, and failure to prosecute patent claims which were excluded from the

interference for several years during the interference and subsequent appeal to the Federal

Circuit.

        3.      P&G filed the application that led to the '122 patent on December 6, 1985

(the '155 application). The '155 application is a continuation-in-part of a patent

application filed on December 21, 1985 (the '543 application). On December 6, 1985,

when P&G filed the '155 application, P&G had already pending in the U.S. Patent and

Trademark Office for six months an application that disclosed various diphosphonic acid

compositions, including 2-(2-pyridyl)-hydroxyethane diphosphonic acid ("2-pyr-

EHDP"). The only difference between the compound disclosed and whose use was

claimed in the '406 patent and risedronate is the location of a nitrogen atom on the

pyridine ring. This application eventually issued on August 2, 1988 as the '406 patent,

and included claims which specify the use of 2-pyr-EHDP for the treatment of

osteoporosis. This patent expired on August 2, 2005.

        4.      Prior to P&G's filing the '543 application, various other diphosphonic

acid compositions were not only known, but were also known to be effective in the

treatment of diseases associated with abnormal calcium and phosphate metabolism, such

as osteoporosis. Among these earlier known compounds were etidronate, pamidronate,

and alendronate.

        5.      Additionally, at the time of the filing of P&G's '543 application, those of

ordinary skill in the art of medicinal chemistry would have had a reasonable expectation

that if one pyridyl form was active to treat disease associated with abnormal calcium and

2

phosphate metabolism, such as osteoporosis, the other two pyridyl forms would likewise be active.

**B.    Anticipation of Asserted Claims 12, and 14 by the '406 Patent**

6.    Teva USA does not believe that P&G will be able to demonstrate that the '543 application includes a written description sufficient to support a claim for priority for any of the asserted claims. Teva USA also does not believe that P&G will be able to establish a date of invention for the asserted claims prior to the filing of the '406 application. Accordingly, the '406 patent anticipates asserted claims 12 and 14 of the '122 patent under 35 U.S.C. §102(e) because the '406 patent discloses compounds within the scope of claims 12 and 14, including 2-pyr-EHDP.

**C.    Obviousness of the Asserted Claims**

7.    Teva USA will prove that the subject matter of the asserted claims of the '122 patent would have been obvious in light of the '406 patent in combination with other prior art references, including U.S. Patent 3,400,150 (the '150 patent), U.S. Patent 4,473,560 (the '560 patent), U.S. Patent 4,416,877 (the '877 patent), or U.S. Patent 4,267,108 (the '108 patent).

8.    As discussed above, the '406 patent is available as prior art under 35 U.S.C. §102(e). As discussed earlier, the '406 patent discloses 2-pyr-EHDP and its use in treating osteoporosis, which is one of many diseases of abnormal calcium and phosphate metabolism. Asserted claims 4, 12, 14 and 16 embrace 3-pyr-EHDP, and asserted claim 23 embraces the use of 3-pyr-EHDP to treat osteoporosis (a disease of abnormal calcium and phosphate metabolism). The only difference between the 2-pyr-EHDP of the '406 patent and the 3-pyr-EHDP of the asserted claims is the location of the

nitrogen in the pyridine ring.. To a medicinal chemist of ordinary skill at the time of the filing of the '122 patent, the disclosure that 2-pyr-EHDP was active would have suggested the 3-pyr-EHDP, and 4-pyr-EHDP, with a reasonable expectation that they would be active as well.

9.    In addition to the general knowledge of medicinal chemists related to pyridine compounds, teachings in the prior art regarding various nitrogen-containing bisphosphonates, including pamidronate and alendronate, indicated that variations in the location of the nitrogen in the bisphosphonate would result in compounds that were active. Accordingly, with these teachings (even in the absence of any knowledge of the similarities between different pyridine forms of the same compound), one of ordinary skill in the art presented with the teachings of the '406 patent regarding 2-pyr-EHDP would have been motivated to alter the location of the nitrogen to obtain additional active compounds, e.g., 3-pyr-EHDP, with a reasonable expectation of success.

10.    Even without the '406 patent, the subject matter of the asserted claims of the '122 patent would have been obvious. Teva USA will prove that the prior art contained various bisphosphonates containing ring-like structures similar to pyridine. The '150 patent, the '560 patent, the '877 patent and the '108 patent, all disclose compounds extremely similar to 3-pyr-EHDP, and other compounds claimed in the asserted claims. Teva USA will prove that these references in combination with other prior art teachings and knowledge would render the asserted claims obvious to one of ordinary skill in the relevant art.

11.    Teva USA does not believe that P&G can establish that any secondary considerations exist, or that any are sufficient, to overcome its showing of obviousness.

D.    **Obviousness-type Double Patenting of all of the Asserted Claims in Light of Claim 15 of the '406 Patent**

12.    Even if the '406 patent is not available as a 35 U.S.C. §102(e) reference, claim 15 of that patent renders the asserted claims invalid for obviousness-type double patenting. The '406 patent was filed prior to the '122 application, and issued first. Since the '406 patent was filed first, and issued first, the double patenting analysis employs a "one-way" test. Accordingly, the asserted claims are invalid for obviousness-type double patenting, if the invention of claim 15 of the '406 patent renders the subject matter of the asserted claims obvious.

13.    Claim 15 of the '406 patent claims the use of several specific compounds, including 2-pyr-EHDP, for the treatment of osteoporosis.

14.    Accordingly, since 3-pyr-EHDP would have been obvious from 2-pyr-EHDP in view of their structural similarity and the knowledge of those skilled in the art relating to such compounds, a person skilled in the art who was aware of the invention of claim 15 of the '406 patent would have found it obvious to make the 3-pyr-EHDP and to use it to treat osteoporosis.

15.    Additionally, since as a matter of law secondary considerations of non-obviousness are not relevant to an obviousness-type double patenting evaluation, it is immaterial whether P&G establishes the existence of any such criteria. In any event, P&G cannot establish secondary considerations sufficient to overcome Teva USA's showing of obviousness. For example, P&G cannot establish that the sales success of risedronate is connected with its alleged nonobviousness.