IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendant. | Civil Action No. 04-940 (JJF) |

**DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO
PRECLUDE THE TESTIMONY OF PLAINTIFF'S PATENT LAW EXPERT**

July 26, 2006

OF COUNSEL:
James Galbraith
Maria Luisa Palmese
A. Antony Pfeffer
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903)
Adam W. Poff (#3990)
The Brandywine Building
100 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

*Attorneys for Defendant
Teva Pharmaceuticals USA, Inc.*

# TABLE OF CONTENTS

                                                                                                  **Page**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................ 1

I.      THE VOIGHT REPORT DOES NOT REBUT ANY
        PROPOSED TESTIMONY OF DR. LENZ ........................................................... 1

II.     MR. VOIGHT'S TESTIMONY IS NOTHING MORE
        THAN LAWYER'S ADVOCACY FROM THE STAND ...................................... 2

        A.     Mr. Voight's Summary of Interference Practice
                Provides No Useful Information ................................................................ 2

        B.     Mr. Voight Proposes to Testify about his
                View of the Law ........................................................................................ 3

        C.     Mr. Voight's Testimony Improperly Assumes
                and Draws Inferences from the PTO Record ............................................. 4

CONCLUSION ................................................................................................................. 7

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Eli Lilly & Co. v. Barr Labs., Inc.*,
    251 F.3d 955 (Fed. Cir. 2001) ................................................................................ 3

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (1996) ................................................................................................ 4

*In re Berg*,
    140 F.3d 1428 (Fed. Cir. 1998) ............................................................................... 3

## INTRODUCTION

In an effort to convince the Court that Mr. Voight's proposed testimony is anything other than a brief in support of P&G's legal and factual theories, P&G has offered an "amended" expert report. According to P&G, the new report is a "slightly" modified version of the old. The only difference between the two is that the new one does not state the ultimate legal conclusion as an "opinion." Nevertheless, it is shot through with legal opinions, factual assertions and inferences drawn from such factual assertions. It is no more acceptable than the prior report, and Mr. Voight should not be permitted to testify.

### I. THE VOIGHT REPORT DOES NOT REBUT ANY PROPOSED TESTIMONY OF DR. LENZ

P&G tries to cast Mr. Voight's report as a "rebuttal" to that of Dr. Lenz, Teva USA's technical expert. Dr. Lenz, however, will offer no opinions concerning the law of double patenting, patent interference practice, appellate practice, whether a "two-way" test should apply, or any other topics about which P&G states that Mr. Voight will testify. On the contrary, Dr. Lenz is a technical expert. He will testify that in his opinion the claimed invention of the '122 patent in suit would have been obvious in view of the claimed invention of the '406 patent. He has offered no opinion, and will offer no opinion at trial, about whether the claimed invention of the '406 patent would have been obvious in view of the '122 patent. Thus, should the Court determine, as a matter of law, that the "two-way" test for obviousness-type double patenting applies, Dr. Lenz has no opinion with respect to the second "way." Mr. Voight's proposed testimony therefore does not rebut Dr. Lenz; it only disagrees with Teva USA's view of the law – that the one-way test applies here.

## II. MR. VOIGHT'S TESTIMONY IS NOTHING MORE THAN LAWYER'S ADVOCACY FROM THE STAND

P&G tries to characterize Mr. Voight as merely a vehicle for explaining the "nuances" of patent interference practice. His report, however, makes clear that he intends to provide opinions on the applicable law, on what facts are relevant, on what inferences should be drawn from those facts, and on how the law applies to those facts. That is, he intends to assume the roles of both the advocate and the judge. Moreover, he intends to posit his views on how the patent examiner and the administrative patent judge would have addressed certain scenarios that never happened. The minor extent to which Mr. Voight actually proposes to address PTO procedures is a smokescreen to mask the testimony's true purpose – to advocate P&G's legal and factual theories.

### A. Mr. Voight's Summary of Interference Practice Provides No Useful Information

Patent interferences have no particular "nuances" that require "experts" to explain. They are administrative proceedings conducted in accordance with statutes and rules. Patent interference practice, like any administrative practice, is spelled out in detail in statutes, federal regulations and case law. The Court deals every day with different bodies of law, different regulatory systems, and different administrative structures. Nothing about patent interferences is so arcane that it requires an explanation from the witness stand by a lawyer posing as a member of some obscure priesthood. Moreover, this is a non-jury case, and the law and legal procedures for interferences can be explained to the Court in writing as part of the briefing of the case, or by trial advocates for the parties.

2

### B. Mr. Voight Proposes to Testify about his View of the Law

Despite P&G's protestations that it only seeks to aid the Court in understanding PTO procedures, the report makes clear that P&G intends to call Mr. Voight as its lawyer-from-the-stand to present P&G's theory as to why the two-way test for obviousness-type double patenting should apply. The goal of the testimony is plain: to persuade the Court to adopt P&G's view of the law.

A major portion of Mr. Voight's report is an unabashed brief promoting P&G's theory of the case. Mr. Voight states his opinion about the law of obviousness-type double patenting: that a "two-way" test applies if the delay in issuing the second patent is not caused by the applicant or his assignee. (Amended Report at 11.) This opinion is an unadorned legal conclusion about which even P&G concedes an expert should not testify. Moreover, it is wrong. The law is clear that the focus in determining whether to apply the two-way test is not on the culpability of the patent applicant, that is, whether the applicant schemed to delay the issuance of the second patent. Instead, the inquiry is about what objectively happened; in particular, it is on the actions of the PTO as reflected in the PTO record. Specifically, and contrary to Mr. Voight's pro-P&G formulation, the two-way test applies only if the delay in issuing the second patent is *solely* attributable to the actions of the PTO. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 969 n.7 (Fed. Cir. 2001); s*ee also In re Berg*, 140 F.3d 1428, 1432 (Fed. Cir. 1998) (two-way test is a "narrow exception to the general rule of the one-way test").

This distinction between what the case law actually holds and Mr. Voight's distillation of it is crucial, and illustrates why testimony of legal experts is a bad idea. It is illegitimate when the "expert" gets the law right, but when, as here, he takes the role of the overeager advocate and

gets it wrong, nothing else he says is useful because it is founded on a false premise. As the Federal Circuit stated in *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (1996):

> We take note of the extent to which the incorrect law was announced by a patent law expert witness. We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, see *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L.Ed. 469, 113 S. Ct. 2786 (1993), but markedly incorrect law. Incorrect statements of law are no more admissible through "experts" than are falsifiable scientific theories.

Indeed, if Mr. Voight is permitted to testify in accordance with his report about the "legal background" (P&G Br. at 6), Teva USA will have no choice but to cross-examine him on the interpretation of statutes and on the holdings and implications of court decisions. Such a presentation of legal opinion and cross-examination about it serves no useful purpose. The way to handle such disputes about the law is to have counsel brief and argue it, not have "expert" lawyers testify about their views.

C.  **Mr. Voight's Testimony Improperly Assumes and Draws Inferences from the PTO Record**

Mr. Voight's report begins by stating his opinion about what, as a technical matter, is disclosed and claimed in the patents at issue, a topic about which he has no expertise and about which he is not qualified to opine. (Amended Report at 7.) He attempts to read the minds of P&G employees, opining about what they "apparently had become aware of." (*Id.*) He then states his opinion that "P&G recognized the risk" that certain conduct created. (*Id.* at 8.) He also states that certain actions of P&G and the examiner were "not surprising." Thus, even through the first few pages, Mr. Voight's report is much more than a walk through the file history.

Mr. Voight's report builds on his erroneous legal premise, discussed above, by proposing testimony about facts (a) about which he has no personal knowledge, or (b) which are set forth in

4

the written record. He then proposes to draw inferences from these facts: that in his opinion P&G acted "reasonably," and that its efforts did not "demonstrate an effort to delay prosecution."[1] First, as discussed above, whether P&G did not engage in an "effort to delay prosecution" is not the issue. What is pertinent is whether the delay is solely attributable to the PTO. Moreover, Mr. Voight has no insight into P&G's motives that are not the insight that anyone could draw from reading the record.

Having started on the wrong legal foot, and having led himself down the wrong path, Mr. Voight engages in rank speculation. He speculates about what the PTO would have done if P&G had taken a course of action it did not take. (*Id.* at 16-17.) He then opines that *if* the administrative patent judge had made a decision based on a course of action that P&G did not take, he *might* have been reversed by the Board of Patent Appeals and Interferences. Offering experts to speculate is bad enough. Offering them to apply layers of speculation could never be an appropriate use of expert testimony. Again, arguing the legal implications of a written record, even a PTO record, is the role of the advocate, not that of the witness.

Finally, in addition to speculation piled upon error, Mr. Voight proposes to testify about "policies." (*Id.* at 14.) He refers to certain actions as "penalizing" P&G. This sort of testimony might be suitable for a Congressional hearing into patent legislation, but has no place in testimony in a patent infringement and validity trial.

As Mr. Voight's report makes clear, nothing about which he is to testify is appropriate testimony for an expert witness. Although this Court sometimes permits patent law experts to

---

[1] Teva USA took the depositions of one of the lawyers involved in prosecuting the relevant applications and of a Rule 30(b)(6) on that prosecution. P&G repeatedly instructed both witnesses not to answer questions about why P&G took particular actions. The Court certainly should not permit an "expert" to speculate about facts P&G refused to permit Teva USA to discover.

provide the jury with a tour of the prosecution history, the allowance of such testimony is a recognition of the difficulties inherent in presenting a complicated and unfamiliar documentary record to a jury. Such testimony is unnecessary in this Court-tried case. Moreover, even Mr. Voight's description of interference practice is not neutral, but instead is cast in the context of P&G's theory of the case and applies the advocate's spin. Mr. Voight's proposed testimony, as set forth in his "Amended" expert report, suffers from the same infirmities as the testimony outlined in his earlier report. It is not a summary of expert testimony. It is instead a legal and factual argument prepared by a lawyer advocating for a particular outcome.

## CONCLUSION

Teva USA's motion to preclude P&G's patent attorney "expert" testimony should be granted.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

July 26, 2006

_____
Josy W. Ingersoll (#1088)
Karen L. Pascale (#2903)
Adam W. Poff (#3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

*Attorneys for Defendant*
*Teva Pharmaceuticals USA, Inc.*

OF COUNSEL:
James Galbraith
Maria Luisa Palmese
A. Antony Pfeffer
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on July 26, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Frederick L. Cottrell, III, Esquire
>Richards Layton & Finger
>One Rodney Square
>920 North King Street
>Wilmington, DE 19801

I further certify that on July 26, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL AND FEDERAL EXPRESS**

>William F. Lee, Esquire
>Wilmer Cutler Pickering Hale and Dorr LLP
>60 State Street
>Boston, MA  02109

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

Attorneys for Teva Pharmaceuticals U.S.A., Inc.